FILED

NAME
__DAVID M. THIMMES__

PRISON NUMBER
__V-81353__

California Me n's Colony State Prison
Postal Box #8103
CURRENT ADDRESS OR PLACE OF CONFINEMENT

__San Luis Obispo. CA 93409-8103__
CITY, STATE, ZIP CODE

2010 MAY 14  AM 11: 39

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

__DAVID M. THIMMES__,
(FULL NAME OF PETITIONER)

**PETITIONER**

v.

__JOHN MARSHALL, Warden__,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**

and

__EDMUND G. BROWN. II__,
The Attorney General of the State of
California, Additional Respondent.

Civil No. _____
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

# CV10-03638 VBF(OP)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   __Superior Court of Los Angeles County__

2. Date of judgment of conviction: __13 August, 2008__

3. Trial court case number of the judgment of conviction being challenged: _____
   __Superior Court NA076325-01__

4. Length of sentence: __EIGHT (8) Years/Four (4) Months__

LODGED
CLERK, U.S. DISTRICT COURT

MAY 12 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

CIV 68 (Rev. Dec. 1998)

K:\COMMON\FORMS\CIV-68.

5. Sentence start date and projected release date: ___Start Date: 17th December, 2008___

   ___Projected Release Date: 25th July, 2014___

6. Offense(s) for which you were convicted or pleaded guilty (all counts): _____

   ___Penal Code #422 ... Making A Criminal Threat___

   ___Penal Code #646.9(a) ... Stalking/Threatening Another Person___

7. What was your plea? (CHECK ONE)

   (a)  Not guilty        ☒

   (b)  Guilty            ☐

   (c)  Nolo contendere   ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)

   (a)  Jury        ☒

   (b)  Judge only  ☐

9. Did you testify at the trial?
   ☐ Yes   ☒ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☐ Yes   ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:

    (a)  Result: ___Affirmed Judgment___

    (b)  Date of result, case number and citation, if known: ___Date of Result:___

         ___07th May, 2009/Case Number B210904___

    (c)  Grounds raised on direct appeal: _____

         ___Count #1 ... Insufficient Evidence___

         ___Count #2 ... Insufficient Evidence___

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:

    (a)  Result: ___Denied___

    (b)  Date of result, case number and citation, if known: ___14th October, 2009___
         ___B210904___

    (c)  Grounds raised: _____

         ___Count #1 ... Insufficient Evidence___

         ___Count #2 ... Insufficient Evidence___

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

    (a)  Result: _____

    (b)  Date of result, case number and citation, if known: _____

                        _____

    (c)  Grounds raised: _____

                        _____

                        _____

                        _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
  ☐ Yes  ☒ No

15. If your answer to #14 was "Yes," give the following information:

    (a)  **California Superior Court** Case Number:_____

    (b)  Nature of proceeding: _____

                        _____

    (c)  Grounds raised: _____

                        _____

                        _____

                        _____

    (d)  Did you receive an evidentiary hearing on your petition, application or motion?
       ☐ Yes  ☐ No

    (e)  Result: _____

    (f)  Date of result: _____

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
  ☐ Yes  ☒ No

17. If your answer to #16 was "Yes," give the following information:

   (a) **California Court of Appeal** Case Number:_____

   (b) Nature of proceeding: _____

                                     _____

   (c) Grounds raised: _____

           _____

           _____

           _____

           _____

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
         ☐ Yes  ☐ No

   (e) Result: _____

   (f) Date of result: _____

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes  ☒ No

19. If your answer to #18 was "Yes," give the following information:

   (a) **California Supreme Court** Case Number:_____

   (b) Nature of proceeding: _____

                                       _____

   (c) Grounds raised: _____

           _____

           _____

           _____

           _____

   (d) Did you receive an evidentiary hearing on your petition, application or motion?

       ☐ Yes  ☐ No

   (e) Result: _____

   (f) Date of result: _____

20.  If you did **not** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court** containing the grounds raised in this federal Petition, explain briefly why you did not:

_____

_____

_____

_____

## COLLATERAL REVIEW IN FEDERAL COURT

21.  Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
     ☒ Yes ☐ No    (IF "YES" SKIP TO #22)
     (a)  If no, in what federal court was the prior action filed? _____
         (i)  What was the prior case number? _____
         (ii)  Was the prior action (CHECK ONE):
                 ☐ Denied on the merits.
                 ☐ Dismissed for procedural reasons?
         (iii)  Date of decision: _____
     (b)  Were any of the issues in this current petition also raised in the prior federal petition?
                 ☐ Yes ☐ No
     (c)  If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
                 ☐ Yes ☐ No

---

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: ___COUNT #1 ... Fourteenth Amendment/Right to Due Process___

___Insufficient Evidence as to each element of charges crime = Criminal Threat___

Supporting FACTS (state *briefly* without citing cases or law) ___For the purpose of this___

___Petition, Petitioner will rely on the trial transcripts, case records and___

___previous Petitions for the comprehensive statement of the case and facts.___

___Petitioner will cite relevant portions of the Record we hope will support our___

___arguments and firmly root our assertions in the soil of reality.___

___ARGUMENT___

___The State of California charged and convicted Petitioner THIMMES for making a___

___criminal threat/Penal Code 442. On 28th October, 2007, Aracelli's husband,___

___George Rossi and son (J.R.), were driving home when they saw Petitioner's___

___vehicle. George pulled his vehicle next to Appellant/Petitioner and yelled:___

___"What the fuck are you coming around my house for?" Petitioner replied sar-___

___castically; "I'm not coming around your house." George threw an ice cream___

___cone at Appellant. It missed him but landed inside his vehicle. Appellant/___

___Petitioner said to George: "I'm going to fuck you up." Petitioner then picked___

___up the ice cream cone, threw it at Georges' vehicle and drove away.___

___The Second Appellate Court writes in its' opinion affirming Mr. Thimmes'___

___Conviction ... "considering all of the surrounding circumstances, a reasonable___

___tier of facts could conclude that the elements of a violation of Section 422___

___has been proven beyond a reasonable doubt. George was Aracelli's husband and___

___this fact should have been evident to Appellant.___

___In reaching this conclusion, the Appellate Court relied on a scenario not___

**Did you raise GROUND ONE in the California Supreme Court?**
☒ Yes ☐ No.

**(b) GROUND TWO**: COUNT #2 ... "Stalking" ... Insufficiency of Evidence/ Prosecution failed to prove beyond a reasonable doubt that Petitioner made a "credible" threat

**Supporting FACTS** (state *briefly* without citing cases or law): (Petitioner relies on previous Peittion, state of Record for sase summary). In Petitioner's case, there was no evidence Petitioner made any expressed threat muchless any "credible threat" with the intent to place the victim in reasonable fear for her safety or the safety of her immediate family.

**Did you raise GROUND TWO in the California Supreme Court?**
☒ Yes ☐ No.

GROUNDS FOR RELIEF ... Ground One    (cont'd)

supported by the record. There is no **EVIDENCE** on record that on 28th October, 2007, Petitioner knew George was Aracelli's husband. However, the Second Court has, by its own words, tethered Mr. Thimmes' conviction to the flawed inferences that flow from the unsubstantiated contention that Mr. Thimmes knew that George was Aracelli's husband, and thusly his statements and actions when accosted by George could be properly construed to express criminal intent, as so far as Thimmes might view George as a rival or obstacle to his (supposed) pursuit of Aracelli.

This evidentiary leap of faith, although unsupportable and thus improper, is essential for the Courts' affirmation. It is the cornerstone upon which Mr. Thimmes' conviction for Criminal Threat rests, for if Mr. Thimmes did not know that George was Aracelli's husband, it follows that this entire incident has been cast out of context. Without the pretext of Mr. Thimmes recognition of Mr. George, we have to divorce the 10-28 incident from the over-reaching "stalking" issue involving Aracelli. At least as it concerns the intent of Mr. Thimmes, we must separate the issues because:

    a) No evidence was presented that Petitioner knew George was Aracelli's husband;

    b) George admitted he had never seen or met Petitioner before their encounter;

    c) No evidence was presented to show Petitioner ever saw George coming or going from his home;

    d) No evidence that George identified himself as Aracelli's husband;

    e) No evidence adduced at trial to establish that Petitioner should have known George was Aracelli's husband; and,

    f) Finally, in light of the lack of evidence presented to the contrary, Petitioner asks that the incident of 28th October, 2007 be isolated from the stalking case. When view from the accurate perspective of Mr. Thimmes not knowing who Mr. George is relative to Aracelli, it appears that it was Mr. Thimmes who was the true victim in the encounter. He was accosted by Mr. George, who not only ranted in profane and accusatory language, but indeed did actually assault Mr. Thimmes by throwing an ice cream cone in his vehicle. And as such provocations often do, it resulted in the defensive behavior of Mr. Thimmes. Petitioner's behavior should have been evaluated solely on the basis of this specific incident. Absent any evidence presented to suggest he knew Mr. George was Ms. Aracelli's husband.

23. Do you have any petition or appeal **now pending** in any court, either **state** or federal, pertaining to the **judgment under attack?**
☐ Yes  ☒No

24. If your answer to #23 is "Yes," give the following information:

   (a) Name of Court: _____

   (b) Case Number: _____

   (c) Date action filed: _____

   (d) Nature of proceeding: _____

_____

   (e) Grounds raised: _____

_____

_____

_____

_____

   (f) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes  ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

   (a) At preliminary hearing: _____Norman Sasamori_____

   (b) At arraignment and plea: _____Norman Sasamori_____

   (c) At trial: _____Norman Sasamori_____

   (d) At sentencing: _____Norman Sasamori_____

   (e) On appeal: _____Lenore DeVita/PO Box #2544/Toluca Lake, CA 91610

   (f) In any post-conviction proceeding: _____

   (g) On appeal from any adverse ruling in a post-conviction proceeding: _____

_____

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☒ Yes  ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☒ No

   (a) If so, give name and location of court that imposed sentence to be served in the future: _____

   (b) Give date and length of the future sentence: _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   ☐ Yes  ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court: _____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

05/4/2010            *David M. Kimmes*

(DATE)                SIGNATURE OF PETITIONER

David M. THiMMeS
_____
Petitioner

EDMUND G. BROWN II
_____
Respondent(s)

**DECLARATION IN SUPPORT
OF REQUEST
TO PROCEED
IN FORMA PAUPERIS**

I, David M. THiMMeS _____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?  ☐ Yes  ☒ No

   a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. _____
   _____

   b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. ___6/5/06____1,000.00 MoNth_____

2. Have you received, within the past twelve months, any money from any of the following sources?

   a. Business, profession or form of self-employment?  ☐ Yes  ☒ No
   b. Rent payments, interest or dividends?  ☐ Yes  ☒ No
   c. Pensions, annuities or life insurance payments?  ☐ Yes  ☒ No
   d. Gifts or inheritances?  ☐ Yes  ☒ No
   e. Any other sources?  ☐ Yes  ☒ No

   If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months: _____
   _____
   _____

3. Do you own any cash, or do you have money in a checking or savings account? *(Include any funds in prison accounts)*
   ☐ Yes  ☒ No
   If the answer is yes, state the total value of the items owned: _____
   _____

---

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 U.S.C § 2254)**

CV-69 (04/05)                                                                                     Page 9 of 10

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property? *(Excluding ordinary household furnishings and clothing)* ☐ Yes ☒ No

   If the answer is yes, describe the property and state its approximate value: _____

   _____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: _____

   _____

   _____

   I, declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

   Executed on ___5/4/2010___    _David M Timmes_
                     *Date*                     *Signature of Petitioner*

## CERTIFICATE

I hereby certify that the Petitioner herein has the sum of $_____ on account to his credit

at the _____ institution where he is

confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said

institution: _____

_____

_____

_____        _____
        *Date*                        *Authorized Officer of Institution/Title of Officer*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT, DIVISION SIX

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>vs.<br><br>DAVID M. THIMMES,<br>Defendant and Appellant. | 2 Crim. B210904<br><br>Superior Court<br>No. NA076325-01 |

## APPELLANT'S OPENING BRIEF

APPEAL FROM THE SUPERIOR COURT OF LOS ANGELES COUNTY

HONORABLE CHARLES D. SHELDON, JUDGE PRESIDING

Lenore De Vita
State Bar #105577
P.O. Box 2544
Toluca Lake, CA. 91610
(323) 512-7313
Attorney for Appellant
David M. Thimmes

# TABLE OF CONTENTS

Statement of Appealability ................................................................. 1

Statement of The Case ...................................................................... 1

Statement of Facts ............................................................................ 2

Argument ......................................................................................... 8

I.   THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE
    CONVICTION IN COUNT 1 AS THE PROSECUTION FAILED TO PROVE
    BEYOND A REASONABLE DOUBT EVERY ELEMENT OF THE CRIME
    OF UTTERING A CRIMINAL THREAT PURSUANT TO PENAL CODE
    SECTION 422 .............................................................................. 8

A.  The Standard of Review ................................................................ 8

B.  Penal Code Section 422 .............................................................. 10

C.  Insufficiency of the Evidence in the Instant Case ......................... 10

    1.  The Nature of Appellant's Remark ........................................... 11

    2.  Specific Intent .......................................................................... 13

    3.  Sustained Fear ......................................................................... 15

D.  Conclusion .................................................................................. 16

II.  THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE
    CONVICTION IN COUNT 2 AS THE PROSECUTION FAILED TO PROVE
    BEYOND A REASONABLE DOUBT APPELLANT MADE A "CREDIBLE
    THREAT" PURSUANT TO PENAL CODE SECTION 646.9 ................ 17

A.  The Standard of Review .............................................................. 17

B.  Penal Code Section 646.9 ........................................................... 17

C.  The "Credible Threat" Element and Applicable Law ..................... 18

D.  Conclusion .................................................................................. 21

CONCLUSION ................................................................................ 22

CERTIFICATION OF WORD COUNT .............................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Cage v. Louisiana* (1990) 498 U.S. 39 ................................................................. 10

*In re David L.* (1991) 234 Cal.App.3d 1566 ....................................................... 13

*In re Ricky T.* (2001) 87 Cal.App.4th 1132 ........................................... 11, 12, 13, 15

*In re Ryan N.* (2001) 92 Cal.App.4th 1359 ......................................................... 10

*Jackson v. Virginia* (1979) 443 U.S. 307 ......................................................... 9, 21

*People v. Allen* (1995) 33 Cal.App.4th 1149 ....................................................... 12

*People v. Alvarez* (2002) 27 Cal.4th 1161 .......................................................... 15

*People v. Barnes* (1986) 42 Cal.3d 284 ............................................................... 9

*People v. Bassett* (1968) 69 Cal.2d 122 ............................................................... 9

*People v. Bolin* (1998) 18 Cal.4th 297 ........................................................... 11, 14

*People v. Borrelli supra,* 77 Cal.App.4th at p. 716 .......................................... 19, 20

*People v. Boyd* (1987) 43 Cal.3d 333 .................................................................. 9

*People v. Brooks* (1994) 26 Cal.App.4th 142 ....................................................... 13

*People v. Carron* (1995) 37 Cal.App.4th 1230 ................................................ 19, 20

*People v. Ewing* (1999) 76 Cal.App.4th 199 ........................................................ 20

*People v. Falck* (1997) 52 Cal.App.4th 287 ..................................................... 19, 20

*People v. Felix* (2001) 92 Cal.App.4th 905 .......................................................... 13

*People v. Garrett* (1994) 30 Cal.App.4th 962 .................................................. 11, 14

*People v. Gudger* (1994) 29 Cal.App.4th 310 ...................................................... 14

*People v. Halgren* (1996) 52 Cal.App.4th 1223 ................................................ 18,19

*People v. Hall* (1964) 62 Cal.2d 104 ............................................................... 9, 10

*People v. Heilman* (1994) 25 Cal.App.4th 391 ................................................. 20, 21

*People v. Hernandez* (1988) 47 Cal.3d 315 .......................................................... 9

*People v. Holt* (1944) 25 Cal.2d 59 ............................................................... 9

*People v. Johnson* (1980) 26 Cal.3d 557 ..................................................... 9

*People v. Kunkin* (1973) 9 Cal.3d 245 ........................................................ 9

*People v. Martinez* (1997) 53 Cal.App.4th 1212 ........................................ 12, 14

*People v. McCray* (1997) 58 Cal.App.4th 159 ........................................... 13

*People v. McMlelland* (1996) 42 Cal.App.4th 144 ..................................... 19

*People v. Melhado* (1998) 60 Cal.App.4th 1529 ........................................ 8

*People v. Mendoza* (1997) 59 Cal.App.4th 1333 ....................................... 12, 15

*People v. Ochoa* (1994) 6 Cal.4th 1199 ...................................................... 9

*People v. Reyes* (1974) 12 Cal.3d 486 ........................................................ 9, 10

*People v. Rowland* (1992) 4 Cal.4th 238, ................................................... 9

*People v. Rowland* (1992) 4 Cal.4th 238 .................................................... 21

*People v. Stanfield* (1995) 32 Cal.App.4th 1152 ....................................... 11, 14

*People v. Stanfield, supra,* 32 Cal.App.4th 1152 ....................................... 14

*People v. Teal* (1998) 61 Cal.App.4th 277 ................................................. 13, 14

*People v. Thomas* (1992) 2 Cal.4th 489 ...................................................... 10

*United States v. Kelner* (2d Cir 1976) 534 F.2d 1020 ............................... 11

**Statutes**

Penal Code section 422 ............................................................................. passim

Penal Code Section 646.9 .......................................................................... passim

**Jury Instructions**

CALCRIM No. 2623 ................................................................................... 17

CALJIC No. 9.94 ........................................................................................ 15

**Constitutional Provisions**

California Constitution, Article I section 15 .............................................................. 8

United States Constitution Fifth Amendment .......................................................... 21

United States Constitution Sixth Amendment ......................................................... 21

United States Constitution Fourteenth Amendment ......................................... 8, 21

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT, DIVISION SIX

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                      Plaintiff and Respondent,<br><br>vs.<br><br>DAVID M. THIMMES,<br>                      Defendant and Appellant. | 2 Crim. B210904<br><br>Superior Court<br>No.  NA076325-01 |

## APPELLANT'S OPENING BRIEF

\*\*\*\*\*

## STATEMENT OF APPEALABILITY

This appeal is from a final judgment that followed a jury trial which disposed of all issues between the parties to this action; it is authorized by Penal Code section 1237, subdivision (a)[1] and Rule 8.308 (a) of the California Rules of Court.

\*\*\*\*\*

## STATEMENT OF THE CASE

David M. Thimmes, hereinafter appellant, was charged by amended information as follows: Count 1, criminal threats in violation of section 422, and Count 2, stalking in violation of section 646.9, subdivision (a).  As to each count it was alleged appellant had suffered a prior conviction which qualified as a strike under the two strikes provision of the Three Strikes Law pursuant to sections 667,

---

[1] Further statutory references are to the California Penal Code unless otherwise noted.

subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d), and served two prior prison terms within the meaning of the provisions of section 667.5, subdivision (b).  (CT 55-57.)

The jury found appellant guilty on all counts as charged.  (CT 110-113.)

Appellant admitted the prior convictions as alleged.  (CT 112-113.)

The trial court sentenced appellant to eight years four months calculated as follows: Count 1: the upper term of three years, doubled to six years pursuant to section 1170.12, subdivision (a)-(d); Count 2: one third the middle term of two years, or eight months doubled to 16 months pursuant to section 1170.12, subdivision (a)-(d), and one year pursuant to section 667.5, subdivision (b).  (CT 117-118; 120-121.)

Appellant was ordered to pay a restitution fine of $1,600.00 pursuant to section 1202.4, subdivision (b), a $40.00 court security fee pursuant to section 1465.8, subdivision (a)(1), and a $160.00 assessment and surcharge pursuant to section1464 and Government Code section 76000.  A $1,600.00 parole restitution fine pursuant to section 1202.45 was stayed.  Appellant was given credit for 364 days pre-sentence custody credit.  (CT 118, 120-121.)

A timely Notice of Appeal was filed.  (CT 122.)


***** 

## STATEMENT OF FACTS

On August 13, 2007, as Araceli Rossi was driving home and making a left turn onto La Jara Street she heard appellant yell "Hey" from his car.  She described the yell as being done in an angry manner with "some hostility."[2] Araceli said this scared her.  She continued to make her left turn around appellant's car.  When she looked in her rearview mirror she saw appellant

---

[2] At trial, Rossi identified appellant as the man who yelled at her.  (RT 332-333.)

2

backing out of the intersection and she "knew" he was going to follow her. She sped up and turned into her cul-de-sac, St Francis Place. (RT 332-333.)

She entered her driveway, turned off the car lights, and ducked down hoping appellant would not notice her car. As soon as appellant passed her cul-de-sac, she ran into her house and watched from the window. Araceli saw appellant make several passes in front of her house. This frightened her as she thought appellant was looking for her. (RT 333-334.)

Jordan, Araceli's son, said his Mother told him she thought someone had followed her home. She pointed out a car that was going around the block past their house. Later that evening Jordan went with his mother when she took her other son to work. On the way Araceli stopped to tell a neighbor who was outside watering his lawn about the incident. The neighbor suggested she notify the police. As Araceli was speaking to the police from her neighbor's cell phone, she saw appellant drive by slowly with a "smirk on his face." This frightened her as she thought it meant appellant probably knew she lived in the vicinity. Jordan and Araceli saw appellant drive by them twice.[3]  (RT 335-336; 480-483.)

After having dropped her son off at work, Araceli and Jordan drove home. Just outside their neighborhood, they saw a police car pull appellant over. Appellant was standing outside his car and the police were talking to him and looking in his trunk. (RT 338, 483-484.)

On October 26, 2007, Jordan saw appellant walk down his driveway and leave a note on the windshield of his mother's car. After leaving the note, appellant walked away. Jordan brought the note inside for his mother. (RT 484-487.)

---

[3] At trial, Jordan identified appellant as the driver of the car that had passed them. (RT 483.)

Araceli said the first word on the note was "Tess", which is not her name, or a name she goes by.  The note read: "Tess, I love you. Kiss".  Araceli acknowledged there was no threat in the note, not "any harmful threat".  (RT 358-359.)

Later that evening, Jordan and his sister Senele drove around the neighborhood looking for appellant.  Once they turned out of their cul-de-sac they saw appellant's car behind them.  They followed appellant and Jordan made eye contact with him at a stop sign.  Jordan said nothing unusual happened during his encounter with appellant.  (RT 487-490.)

On October 27, Araceli made flyers asking the neighbors if they saw appellant's car in the neighborhood to call the police.  That same day Araceli found a second note on the windshield of her car.[4]  The first word on this note was also "Tess."  The note read: "Tess, I love you.  Can I talk to you?  It will help us.  So can we talk and so forth.  All I live for is to talk to you."[5]  (RT 344-346, 607.)

On October 28, George and Jordan were driving back home after getting ice cream when they had an encounter with appellant.[6]  Jordan recognized appellant's car and pointed it out to his father saying: "That's the guy that was following my Mom."  George followed appellant's car and pulled parallel to him at a stop sign.  George had his son roll down the passenger side window and George yelled "What the F are you doing following—coming over to my house?"  Appellant denied coming over to George's house.  Both George and Jordan described

---

[4] The notes were left on the same car Araceli had been driving when she first encountered appellant on August 13.  (RT 342.)

[5] At trial, the note was marked as exhibit 8 and displayed for the witness, jury, and trial court on an overhead projector.  The note was not read into evidence. However, in closing argument the prosecutor read the contents of exhibit 8.  (RT 343-346; 607)

[6] At trial, George identified appellant as the person he had the encounter with. (RT 469.)

appellant's tone as "sarcastic." George threw his ice cream cone through the passenger side window and it landed inside appellant's car. Appellant responded saying: "I'm going to fuck you up." As George drove off, appellant threw the ice cream cone back and it hit George's van. (RT 462-465; 490, 492.)

George said he threw his ice cream cone by impulse. He felt frustrated and angry about appellant's behavior towards his family. George said appellant's statement: "I'm going to fuck you up" made him feel scared. (RT 466-467.)

The next time George saw appellant was November 1, at approximately 6:00 in the evening. Appellant was driving from the direction of the Rossi's home. George called the police. George felt as if appellant was stalking his family. (RT 467-468; 471.)

On cross-examination George acknowledged he initiated the contact with appellant by driving up beside him, he initiated the verbal contact, he used profanity first, and he threw the ice cream intending on hitting appellant. (RT 474.)

George related the "ice-cream" incident to Araceli. She said it made her "fearful" because appellant had confronted her husband with her son in the car. These events were "terrorizing" for her. Before appellant's arrest Araceli was always looking over her shoulder. She would not go home unless someone was there. If she were home alone she would lock her bedroom door. Since the incidents they installed an alarm system and put window treatment on some of the windows. She took self-defense classes, alerted the police at her work place, and sought some counseling. (RT 348-349.)

Around October 30, 2007, Wendell Oien came across a flyer posted in his neighborhood indicating there had been a car driving through the neighborhood annoying one of the residents. That evening, Oien noticed a car near he thought matched the description of the one in the flyer. (RT 322-323.)

Oien followed the car as it drove through the neighborhood. At trial, Oien identified appellant's car as the vehicle he followed. (RT 325-327.)

On November 1, Detective Shawn Irving spoke with George Rossi a few minutes after George had seen appellant driving out of his neighborhood. While Irving was speaking to George a call came through. Irving identified himself as a police officer and the person on the other end identified himself as appellant. Irving explained he needed to verify the identity of the caller. The caller agreed to meet Irving later in the evening at the Police Station. (RT 509-512.)

Irving and his partner Officer Tony Benskin left the scene and went to the Yearling address in Lakewood. [7]   Irving saw appellant's car parked illegally in front of the house, with the driver's door open, and appellant standing at the front door. The car was towed from the scene. (RT 512-514.)

Benskin searched appellant's car recovering two hand-written notes each starting with the word "Tess", a pair of binoculars, and a binocular case. All the items were booked into evidence. Benskin arrested appellant. (RT 517-521.)

Detective Rocio Gonzalez was the investigating officer. She prepared and showed Araceli, Jordan, and George Rossi six-pack photographic line-ups. Araceli circled the photograph in position number 4, which was a photograph of appellant. Araceli identified appellant's photograph as the person who had been following her and leaving notes. George circled photographs numbers 4 and 5. In George's six-pack, appellant's photograph was in position number 5. George said he had a problem identifying the person because the suspect was wearing sunglasses and a baseball cap at the time of their encounter.[8]   Jordan circled photograph number 2 as the person he saw leave the note on his Mother's car and the man who following his mother. Appellant's photograph was in position number 2. (RT 350, 526, 529-533.)

---

[7]   Detective Irving ran appellant's vehicle license plate and it showed an address of 2942 Yearling in the City of Lakewood. (RT 510.) At trial, Irving identified appellant as the man he saw standing at the front door. (RT 514.)

[8]   When Officer Gonzalez searched appellant's car at the impound lot, she recovered a pair of sunglasses and four baseball caps. (RT 528.)

Gonzalez interviewed appellant after apprising him of his *Miranda* rights. Appellant acknowledged he told George he was going to beat him up, but only after George tried to "crash into him". Appellant said he had been in the Rossi's neighborhood looking for his daughter. The police pulled him over and told him he was following and scaring a woman. He denied following anyone. He also denied leaving notes on anyone's car, yet when shown the notes recovered from Araceli's windshield he admitted writing them. (RT 534-536.)

During the interview, appellant told Gonzalez he did not know exactly where his daughter lived. Gonzalez believed appellant's ex-wife, Teresita, lived in Northern California and had a restraining order against him. Appellant told Gonzalez his ex-wife had two nicknames, "Tess" and "Tessie." (RT 540, 549.)

## ARGUMENT

### I

### THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE CONVICTION IN COUNT 1 AS THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT EVERY ELEMENT OF THE CRIME OF UTTERING A CRIMINAL THREAT PURSUANT TO PENAL CODE SECTION 422

Appellant was convicted in Count 1 of making a criminal threat against George Rossi in violation of section 422. There was insufficient evidence for a reasonable juror to conclude the prosecutor had established, beyond a reasonable doubt, every element of the charged crime. In order to prove a violation of section 422, the prosecution must prove: (1) appellant willfully threatened to commit a crime which if committed would result in death or great bodily injury; (2) he made the threat with the specific intent the statement be taken as a threat; (3) the threatening statement, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; and (4) the threatening statement caused the other person reasonably to be in sustained fear for his own safety, regardless of whether petitioner actually intended to carry out the threat. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536; Pen. Code 422, CALJIC 9.94.) This, the prosecution failed to do.

In appellant's case the evidence adduced at trial was insufficient to support the jury's verdict and as such, appellant's conviction for uttering a criminal threat must be reversed.

### A.    The Standard of Review

Under the due process clause of the Fourteenth Amendment and Article I, section 15 of the California Constitution, no person can be made to suffer a

8

criminal conviction except upon proof sufficient to convince a trier of fact beyond a reasonable doubt of the existence of every element of the charged offense. (*Jackson v. Virginia* (1979) 443 U.S. 307, 315; *People v. Boyd* (1987) 43 Cal.3d 333, 346; *People v. Rowland* (1992) 4 Cal.4th 238, 269.)

Where the sufficiency of the evidence is challenged, the appellate court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the record in a light most favorable to the prosecution. (*Jackson v. Virginia, supra,* 433 U.S. at pp. 318-319; *People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) In doing so, the appellate court must resolve the issue of sufficiency of the evidence in light of the whole record, and, the appellate court must judge whether the evidence of each of the essential elements of the offense of which the defendant stands convicted is substantial and of solid value. (*Id.,* at pp. 576-578; *People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Hernandez* (1988) 47 Cal.3d 315, 345-346; *People v. Ochoa* (1994) 6 Cal.4th 1199, 1206.) "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence, it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*People v. Kunkin* (1973) 9 Cal.3d 245, 250.)

These principles preclude this court from upholding a conviction merely because there is some evidence to support the elements of the prosecution's case. Rather, "implicit in [the appellate court's] duty to determine the legal sufficiency of evidence to sustain a verdict is [the appellate court's] obligation, in a proper case, to appraise the sufficiency and effect of evidence admitted or otherwise indubitably established as precluding or overcoming, as a matter of law, inconsistent inferences sought to be derived from weak or inconclusive sources." (*People v. Reyes* (1974) 12 Cal.3d 486, 499; *People v. Holt* (1944) 25 Cal.2d 59, 70; *People v. Bassett* (1968) 69 Cal.2d 122, 137; *People v. Hall* (1964) 62 Cal.2d 104, 110.) Thus the testimony of witnesses which is "inherently insubstantial," and which is contradicted by other "solid and believable evidence," is an

9

inadequate foundation to support a criminal conviction. (*People v. Reyes, supra,* 12 Cal.3d 499; *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371-1372.)

Furthermore, the evidence must be capable of supporting a finding as to every fact required for conviction beyond a reasonable doubt. What is required is "near certainty." (*People v. Hall, supra,* 62 Cal.2d at p. 112,) or "evidentiary certainty." (*Cage v. Louisiana* (1990) 498 U.S. 39, 41.) It is therefore not enough that there is some evidence based upon which a trier of fact might speculate that the defendant is in fact guilty. (*People v. Thomas* (1992) 2 Cal.4th 489, 545, Mosk, J., dissenting.)

## B.    Penal Code Section 422

Penal Code Section 422 provides in pertinent part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished ..."

## C.    Insufficiency of the Evidence in the Instant Case

Section 422 incorporates a mental element on the part of both the defendant and the victim. In order to establish a section 422 violation, the prosecution must establish the victim was in a state of "sustained fear," the nature of the threat, both on "it's face and under the circumstances in which it is made," was such as to

convey to the victim an immediate prospect of execution of the threat and to render the victim's fear reasonable. (*People v. Garrett* (1994) 30 Cal.App.4th 962.) The prosecution must also establish the unequivocality, unconditionality, immediacy, and specificity are sufficiently present in the threat and surrounding circumstances to convey a gravity of purpose and immediate prospect of execution of the threat to the victim. (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157.)

,

### 1.   The Nature of Appellant's Remark

Section 422 demands the purported threat be examined "on its face and under the circumstances in which it was made." (*People v. Bolin* (1998) 18 Cal.4th 297, 339-340; *United States v. Kelner* (2d Cir 1976) 534 F.2d 1020, 1026-1027; *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137.)

The "threat" appellant allegedly made to George was "I'm going to fuck you up." On its face, the statement was not a threat to commit any crime much less one that would have resulted in death or great bodily injury. Judging appellant's verbal remark in the context of the circumstances shows it lacked credibility as a serious, deliberate statement of purpose. There was neither immediacy nor specificity to the so-called "threat".

Appellant made the statement during an encounter with George. George admitted he initiated contact with appellant when he followed appellant in his van and pulled up alongside him at a stop sign. George was the first one to use profanity when he angrily yelled at appellant "What the fuck are you coming around my house for?". And, it was only after George threw his ice cream at appellant intending to hit him, but missed, that appellant said "I'm going to fuck you up." The circumstances established George as the aggressor and appellant as the target. (RT 474-477.)

The evidence adduced at trial showed appellant was merely responding to George's extremely aggressive behavior. George made the first contact,

11

confronted appellant in an angry manner, used profanity first, and assaulted appellant. After venting steam, appellant drove away throwing the ice cream at George's van. Apparently the "immediate prospect of execution" of appellant's so called "threat" would have to wait until some unspecified time and place.

Further, appellant's remark was ambiguous on its face and no more than a vague statement of possible retaliation without prospect of execution. (*In re Ricky T., supra,* 87 Cal.App.4th at p. 1137; *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1218.) Appellant did not specify what "fuck up" meant, much less what it involved. The exchange between George and appellant amounted to nothing more than an exchange of profanity and a display of male "chest thumping".

Unlike other cases upholding section 422 threats, appellant and George had no prior history of disagreements or previous quarrels, nor had they addressed offensive remarks to each other. In fact, this was the first time they had met. (RT 476.) Appellant did not brandish a weapon during the encounter. Also, appellant took no actions towards George after they exchanged words and appellant left the scene. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1341-1342, [Even though defendant's words themselves-"you fucked up my brother's testimony. I'm going to talk to some guys from [my street gang]"-did not articulate a threat to commit a specific crime resulting in death or great bodily injury, the jury was free to interpret the words spoken from all of the surrounding circumstances of the case. Defendant and victim had known each other for years because of their mutual association in criminal street gang. Two days earlier the victim had given damaging testimony against defendant's brother, whom the victim knew to be member of same gang, and the victim knew gang members were capable of violence and could retaliate against her for hurting fellow gang member.]; *People v. Martinez, supra,* 53 Cal.App.4th at pp. 1214-1216, [Defendant was extremely angry, cursing, and in close proximity when he threatened the victim. His actions and conduct after he made the threat gave meaning to his words implying his threats were serious.]; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1151-1154,

12

[Defendant was armed, mobile, and "at large" when he threatened to kill the victim and her daughter.]; *People v. McCray* (1997) 58 Cal.App.4th 159, [Defendant damaged telephone line, trespassed, disturbed the peace, made annoying telephone calls, and had been violent towards the victim in the past.]; *People v. Stanfield, supra,* 32 Cal.App.4th at pp.1154-1157, [Defendant threatened that if her former attorney did not join her in bringing her "Universe Reform Party" into power, she would hire gang members to kill him.])

Appellant's remark suggested no gravity of purpose; there was no evidence his words were accompanied by any show of physical violence. He did not threaten George or any member of George's family with physical harm. He did not exit his car and approach George. On the contrary, appellant drove away. Appellant and George shared no past as to give the words they exchanged special meaning. Since surrounding circumstances can be used to show a section 422 threat has occurred, the absence of such circumstances is also meaningful in showing such a threat has **not** occurred. (*In re Ricky T., supra,* 87 Cal.App.4th at p. 1139.) In this case, there was no evidence of any circumstance occurring before, during, or after appellant's statement which would support a finding that a criminal threat had been uttered. Certainly there was no "threat" to commit a crime which would have caused death or great bodily injury to George.

## 2.    Specific Intent

Section 422 requires the person making the threat must have the specific intent that the utterance be taken as a threat, but he need have no intent of actually carrying it out. (*People v. Felix* (2001) 92 Cal.App.4th 905, 911; *In re David L.* (1991) 234 Cal.App.3d 1566, 1658.) Thus, mere angry utterances are not enough to constitute a violation of section 422. (*People v. Teal* (1998) 61 Cal.App.4th 277, 281.)

*People v. Brooks* (1994) 26 Cal.App.4th 142, illustrates a case where the threat was unequivocal. There, the defendant put a gun into the victim's mouth

and threatened to kill her if she testified. (*Ibid.*) *Brooks* also demonstrates the threat need not be unconditional, for there the threat would be executable only if she testified. In *People v. Bolin* (1998) 18 Cal.4th 297, 338, the court held the threat of death or great bodily injury need not be unconditional to be a violation of section 422.

The meaning of the defendant's threat must be gleaned from the words and all of the surrounding circumstances. (*People v. Martinez, supra,* 53 Cal.App.4th at p. 1218.) It is necessary to review the language and context of the threat to determine if the speaker had the specific intent the statement be taken as a threat. (*People v. Gudger* (1994) 29 Cal.App.4th 310, 321.) The focus of section 422 is whether the threat communicated a gravity of purpose and immediate prospect of execution of the threat. (*People v. Stanfield, supra,* 32 Cal.App.4th 1152, 1159.) In *People v. Garrett* (1994) 30 Cal.App.4th 962, the defendant's threat to put a bullet in his wife's head conveyed gravity of purpose and immediate prospect of execution because of his past beatings of her, her knowledge he kept a gun in the house, and her knowledge that years before he had been convicted and imprisoned for voluntary manslaughter. (*Ibid.*)

In *People v. Gudger, supra,* 29 Cal.App.4th 310, the defendant threatened a judge through another judge's secretary saying she would buy a gun and would personally come into the courtroom and shoot and kill the judge if the judge did not rule in her favor. (*Id.* at p. 314.) The appellate court found this was not just an intemperate, overly dramatic, and inartful request to change judges; the threats went beyond hyperbole or an emotional request to disqualify a judge and constituted true threats within the meaning of the statute. (*Id.* at p. 312.)

In appellant's case, there was no substantial evidence, absent appellant's "mere angry utteranc[e]" that appellant intended his statement be considered a threat or that he intended to commit a crime resulting in death or great bodily injury to "someone." (*People v. Teal, supra,* 610 Cal.App.4th at 281.)

Detective Gonzalez interviewed appellant at the men's jail and asked him

about the incident involving the ice cream. At trial, Gonzalez testified appellant told her he told George he was going to "beat up on him". Appellant made this remark after George "tried to crash into [him]." (RT 537-538.) California law is clear that the corpus delicti, or body of the crime, must be proved by evidence independent of the extrajudicial statements of the defendant. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1169, and cases cited therein.) Specific intent is an element of the crime of making a criminal threat. (Pen. Code §422; CALJIC No. 9.94.) Gonzalez's testimony was insufficient to establish appellant had the requisite specific intent when he made his statement and that he meant his statement to be taken as a threat.

There was nothing about the circumstances surrounding appellant's vague statement from which the jury could have reasonably concluded appellant had uttered a criminal threat.

### 3.    Sustained Fear

The prosecution must prove beyond a reasonable doubt the threat be such as to cause a reasonable person to be in sustained fear for his personal safety. This phrase has both an objective and a subjective component. "A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." (*In re Ricky T., supra,* 87 Cal.App.4th at p. 1140.)

The words "sustained fear" in section 422 mean a "period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen, supra,* 33 Cal.App.4th at p. 1156.) In *People v. Allen,* the court found that "[fifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422." (*Id.,* at p. 1156.) In *People v. Mendoza, supra,* 59 Cal.App.4th at p. 1342, the victim was in fear for 15 to 30 minutes after hearing a threat before the police arrived; this was sufficient time to establish "sustained fear."

The encounter in appellant's case was brief, non-violent, and nothing more than an exchange of expletives and posturing. The alleged victim initiated the contact with appellant, uttered the first profanity, and threw the first ice cream. Taking into consideration the circumstances under which the retorts were exchanged, appellant's remark could not possibly have conveyed to George an immediate prospect it would be carried out or rendered any sustained fear he may have had reasonable as a matter of law. George testified he felt "kind of scared" by the manner in which appellant denied coming over to his house and by appellant's remark. (RT 466-467.) "Kind of scared" is not sustained fear as define by section 422.

### D.      Conclusion

Since appellant never made a threat to commit a crime which would result in death or great bodily injury, and arguably even if his remark was considered a threat there was never any realistic immediate prospect appellant would carry it out, since appellant did not have the specific intent his statement be taken as a threat, and since George could not have been reasonably in sustained fear as a matter of law, the prosecution failed to prove beyond a reasonable doubt critical elements of the crime defined by Penal Code Section 422. Appellant was simply reacting to the victim's aggressive confrontation, nothing more. Therefore, the judgment of conviction for uttering a criminal threat must be reversed.

## II

## THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE CONVICTION IN COUNT 2 AS THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT APPELLANT MADE A "CREDIBLE THREAT" PURSUANT TO PENAL CODE SECTION 646.9

Appellant was convicted in Count 2 of "stalking" in violation of section 646.9, subdivision (a).  There was insufficient evidence for a reasonable juror to conclude the prosecutor had established, beyond a reasonable doubt, every element of the crime.  In order to establish a violation of section 649.9, subdivision (a), the prosecution had to prove beyond a reasonable doubt appellant (1) willfully, maliciously, and repeatedly followed, or willfully and maliciously harassed Araceli Rossi; and (2) made a credible threat (3) with the specific intent to place Araceli in reasonable fear for her safety or the safety of her immediate family. (Pen. Code §646.9, subd. (a), see CALJIC No. 9.16.11.)  In appellant's case there was no evidence appellant made any express threat, much less any "credible threat" with the intent to place the victim in reasonable fear for her safety or the safety of her immediate family.  As such, there was insufficient evidence to support the jury's verdict and appellant's stalking conviction must be reversed.

### A.     The Standard of Review

The standard of review for sufficiency of the evidence was addressed in Argument I, subheading "A.  The Standard of Review", ante, pp. 7-8 and is not repeated here, but incorporated fully by this reference.

### B.     Penal Code Section 646.9

Penal Code Section 646.9, subdivision (a) states: "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person

in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, ... ."

Subdivision (g) defines "credible threat" as a "verbal or written threat, ... or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety pr the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target to reasonably fear for his or her safety or the safety of his or her family. ..."

## C.   The "Credible Threat" Element and Applicable Law

An element of section 646.9, subdivision (a) requires the defendant make a "credible threat" with the specific intent of making the threatened person reasonably fear for his or her safety. The stalking statute defines "credible threat" as "a verbal or written threat, ... or a threat implied by a pattern of conduct ... made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family." (Pen. Code §646.9, subd. (g).) Although the prosecution need not prove the defendant had the intent to actually carry out the threat, the evidence must show the defendant made the threat "with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family." (*Id.*)

Stalking is a specific intent crime because the perpetrator must specifically intend to place the victim in reasonable fear. (*People v. Halgren* (1996) 52 Cal.App.4th 1223, 1230-1231.) Accordingly, it is the perpetrator's intent not the actual conduct engaged in which can trigger a stalking allegation. (*Id.* at p. 1231.) Nevertheless, in determining whether a threat was made, a fact finder may consider the entire factual context including the surrounding events and the

reactions of any listeners. (*People v. Falck* (1997) 52 Cal.App.4th 287, 298.)  One court defined a threat as an "expression of an intent to inflict evil, injury, or damage on another." (*People v. Borrelli* (2000) 77 Cal.App.4th 703, 715 [citation omitted].)  "A mere expression of anger or emotion does not fall within the provisions of the statute." (*People v. Halgren, supra,* 51 Cal.App.4th at p. 1231.)

A comparison of cases discussing credible threats in the context of stalking contain significantly more compelling and egregious actions than found in appellant's case.  In *People v. Borrelli, supra,* 77 Cal.App.4th at pp. 708-709, defendant was convicted of stalking his wife, from whom he was separated.  The defendant "...was threatening her and telling her that he was going to kill both her and her parents."  He later, on the same day, "...stomped on her foot, kicked her, and screamed obscenities at her."  A few months later, appellant was angry at his wife, rear-ended her car, and "...told her he was going to kill her."  A few months after that, the defendant again told his wife he was going to kill her.  He had firearms and threatened to "...blow her head off with a gun."

In *People v. Carron* (1995) 37 Cal.App.4th 1230, 1234, defendant issued "...such threats as; 'You're going to have your face cut off... '...' call me here...or you're gonna have your tongue cut off... 'Next time I'll kill you.' "  In *People v. Halgren, supra,* 51 Cal.App.4th at pp. 1227-1228, 1233, defendant made a series of telephone calls, including one in which he threatened the victim with a statement that he could do whatever he wanted to her.  Similarly, in *People v. McMlelland* (1996) 42 Cal.App.4th 144, 149-150, 153-154, defendant stated "fire bomb at 6:00 o'clock," he called the victim's children vicious names, and his overall behavior violated the restringing order.

*People v. Falck, supra,* 52 Cal.App.4th at p. 298, presented a case where the defendant's obsession with the victim continued over 12 years notwithstanding the victim did not know him, had evidenced no desire to know him, and had taken steps to ensure the would not contact her.  Defendant sent the victim pornographic pictures and letters disclosing an obsessive desire to engage in sexual acts with the

victim and to marry her and be with her for "eternity." Defendant once sent the victim a dozen black roses, a gift with sinister overtones.

The factual scenarios in these cases differ drastically from the circumstances of appellant's case where appellant's actions were limited to shouting "Hey", driving by Araceli or her house a few times, and leaving two non-threatening love notes addressed to his ex-wife "Tess." At best appellant's conduct and words may be characterized as annoying and harassing, but they did not rise to the level of stalking.

Additionally, the "credible threat" "...must be made with the specific intent to place the victim in a reasonable fear of death or great bodily harm." (*People v. Heilman* (1994) 25 Cal.App.4th 391, 401; accord, *People v. Ewing* (1999) 76 Cal.App.4th 199, 210, [" ...making a credible threat...with the intent to place that person in reasonable fear of death or great bodily injury."]; *People v. Carron* (1995) 37 Cal.App.4th 1230, 1238.) The perpetrator must have the *"...intent* to induce fear." (*People v. Carron, supra,* 37 Cal.App.4th at p. 1238.) His "course of conduct" must be "intended to cause someone to fear for their life..." (*Id.*) Pursuant to section 646.9, subdivision (a), the threat must be issued "...with the intention of inflicting substantial emotional distress..." (*People v. Borrelli supra,* 77 Cal.App.4th at p. 716.) Because intent is the critical element, section 646.9 is "...directed only to truly dangerous threats, i.e., those that sometimes are termed 'true threats.' " (*People v. Falck, supra,* 52 Cal.App.4th at p. 296.)

Here, nothing appellant ever did or said was made with the specific intent to threaten the safety of Araceli or her family. Appellant never said or did anything from which a threat to inflict bodily injury or death could be inferred. The evidence adduced at trial was simply insufficient to prove beyond a reasonable doubt that appellant made a credible threat against Araceli which placed her in fear for her safety or the safety of her family.

Appellant made no verbal threats of any kind, made no physical contact with Araceli or any member of her family, made no threatening gestures,

brandished no weapon, and took no physical action toward anyone, including Jordan during their initial encounter. There was no evidence appellant ever threatened Araceli, much less uttered any words or took any action "...with the specific intent to place [her] in a reasonable fear of death or great bodily harm." (*People v. Heilman, supra,* 25 Cal.App.4th at p. 401.) He never uttered anything remotely similar to a "true threat." (*People v. Falck, supra,* 52 Cal.App.4th at 296.)

The entirety of the evidence shows appellant's only intent was to express his love for his ex-wife "Tess" and to talk to her. While appellant's conduct may have been unwanted, harassing, and may have caused Araceli to be scared it did not constitute stalking. There was no evidence anything appellant did was done with the type of "sinister overtones" as in *Falck.* Appellant never issued a "credible threat" nor was there any evidence he ever possessed the necessary specific intent to inflict harm.

## D.    Conclusion

As a matter of law, because appellant did not issue a credible threat, there was insufficient evidence to support appellant's stalking conviction. His unsupported conviction violates his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments. (*Jackson v. Virginia, supra,* 443 U.S. at pp. 315-316; *People v. Rowland, supra,* 4 Cal.4th at p. 269.)

## CONCLUSION

Based on the foregoing, appellant submits the judgment of the trial court must be reversed.

DATED:  February 4, 2009

Lenore De Vita
Attorney for Appellant David M. Thimmes

## CERTIFICATION OF WORD COUNT

Pursuant to Rule 8.360, I certify the attached Appellant's Opening Brief has a proportionally spaced typeface of Times New Roman and contains less than 25,500 words. In particular, this brief contains 6,449 words, excluding the Tables and this Certification.

In making this certification, counsel has relied on the word count of the word processing system used to prepare this brief (Word).


Lenore De Vita
Attorney for Appellant David M. Thimmes

# DECLARATION OF SERVICE BY MAIL
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Lenore De Vita, declare I am employed in Los Angeles County, I am over the age of eighteen (18) years, and not party to the within action; my business address is P.O. Box 2544 Toluca Lake, California, 91610.

On February 4, 2009, I served the within Appellant's Opening Brief on the interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Toluca Lake, California, addressed as follows:

Office of the Attorney General
300 South Spring Street
North Tower, Suite 5001
Los Angeles, CA 90013

Norman Sasamori
Attorney at Law
1925 Century Park East, Suite 500
Los Angeles, CA 90067

District Attorney's Office
415 W. Ocean Blvd., Room 305
Long Beach, CA 90802-4591
Attn: Pat O'Crowley, DDA

California Appellate Project
520 S. Grand Avenue
Fourth Floor
Los Angeles, CA 90071

The Honorable Charles D. Sheldon
Long Beach Courthouse
415 W. Ocean Blvd
Long Beach, CA 90802-4591

David M. Thimmes, V-81353
Sierra Conservation Center
Housing 3101L
5150 O'Byrnes Ferry Road
Jamestown, CA 95327
Defendant and Appellant

I declare under penalty of perjury the forgoing is true and correct and this proof of Service was executed at Toluca Lake, California on February 4, 2009.

Lenore De Vita

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT, DIVISION SIX

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

Plaintiff and Respondent,

Case No. B210904

v.

**DAVID M. THIMMES,**

Defendant and Appellant.

Ventura County Superior Court Case No. NA076325
The Honorable Charles D. Sheldon, Judge

**RESPONDENT'S BRIEF**

EDMUND G. BROWN JR.
Attorney General of California
PAMELA C. HAMANAKA
Senior Assistant Attorney General
SARAH J. FARHAT
Deputy Attorney General
JULIE A. HARRIS
Deputy Attorney General
State Bar No. 238672
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 897-7276
  Fax:  (213) 897-2808
  E-mail:  Julie.Harris@doj.ca.gov
*Attorneys for Respondent*

# TABLE OF CONTENTS

**Page**

Statement of the Case.................................................................... 1

Statement of Facts........................................................................ 2

    A.   Prosecution Evidence..................................................... 2

    B.   Defense Evidence ......................................................... 8

Argument ...................................................................................... 8

   I.    Substantial Evidence Supported the Jury's Verdict for
        Making Criminal Threats.................................................... 8

        A.   Relevant Proceedings................................................... 8

        B.   Standard of Review..................................................... 10

        C.   Substantial Evidence Supported Appellant's
            Conviction for Criminal Threats............................... 11

           1.   Appellant made his threat with the
               specific intent that it be taken as a threat....... 12

           2.   Appellant's threat was "unequivocal,
               unconditional, immediate, and specific" ....... 13

           3.   Appellant placed George in sustained
               fear ................................................................. 16

   II.   Substantial Evidence Supported the Jury's Verdict for
        Stalking ............................................................................ 17

        A.   Appellant Made a Credible Threat ........................... 18

        B.   Appellant Intended to Place the Victim in
            Reasonable Fear of Death or Great Bodily
            Injury....................................................................... 19

Conclusion ...................................................................................... 20

## TABLE OF AUTHORITIES

**Page**

CASES

*In re David L.*
(1991) 234 Cal.App.3d 1655 ................................................................ 12

*In re Ricky T.*
(2001) 87 Cal.App.4th 1132 ........................................................ 15, 16

*In re Ryan D.*
(2002) 100 Cal.App.4th 854 ........................................................ 13, 16

*Jackson v. Virginia*
(1979) 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] ..................... 10

*Miranda v. Arizona*
(1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed. 694] .......................... 7

*People v. Akins*
(1997) 56 Cal.App.4th 331 ................................................................ 10

*People v. Allen*
(1995) 33 Cal.App.4th 1149 ........................................................ 16, 17

*People v. Bolin*
(1998) 18 Cal.4th 297 ................................................................ 11, 13

*People v. Ceja*
(1993) 4 Cal.4th 1134 ........................................................................ 11

*People v. Crittenden*
(1994) 9 Cal.4th 83 ............................................................................ 11

*People v. Doolin*
(2009) 45 Cal.4th 390 ........................................................................ 10

*People v. Ewing*
(1999) 76 Cal.App.4th 199 ................................................................ 17

*People v. Falck*
(1997) 52 Cal.App.4th 287 .................................................... 18, 19, 20

## TABLE OF AUTHORITIES
### (continued)

Page

*People v. Felix*
(2001) 92 Cal.App.4th 905 ............................................. 12, 14

*People v. Frye*
(1998) 18 Cal.4th 894 .................................................... 10

*People v. Garrett*
(1994) 30 Cal.App.4th 962 ............................................. 16

*People v. Lyles*
(1957) 156 Cal.App.2d 482 ............................................ 19

*People v. Martinez*
(1997) 53 Cal.App.4th 1212 ........................................... 15

*People v. Mayfield*
(1997) 14 Cal.4th 668 .................................................... 10

*People v. McClelland*
(1996) 42 Cal.App.4th 144 ............................................. 18

*People v. McCray*
(1997) 58 Cal.App.4th 159 ............................................. 16

*People v. Mendoza*
(1997) 59 Cal.App.4th 1333 ........................................... 14

*People v. Mincey*
(1992) 2 Cal.4th 408 ..................................................... 11

*People v. Mosley*
(2007) 155 Cal.App.4th 313 ........................................ 13, 14

*People v. Ochoa*
(1993) 6 Cal.4th 1199 .................................................... 11

*People v. Reed*
(2000) 78 Cal.App.4th 274 ............................................. 11

# TABLE OF AUTHORITIES
## (continued)

Page

*People v. Solis*
(2001) 90 Cal.App.4th 1002 ...................................................... 14, 16

*People v. Stanfield*
(1995) 32 Cal.App.4th 1152 ...................................................... 13, 14

*People v. Toledo*
(2001) 26 Cal.4th 221 ............................................................. 11, 12

*People v. Zavala*
(2005) 130 Cal.App.4th 758 ........................................................ 18

STATUTES

Gov. Code, § 76000 ................................................................... 2

Pen. Code, § 422 ............................................................... passim

Pen. Code, § 646.9 .................................................................. 18

Pen. Code, § 646.9, subd. (a) ................................................... 1, 17

Pen. Code, § 646.9, subd. (g) ...................................................... 18

Pen. Code, § 667, subds. (b)-(i) .................................................... 1

Pen. Code, § 667.5, subd. (b) ..................................................... 1, 2

Pen. Code, § 1118.1 .................................................................. 8

Pen. Code, § 1170.12, subds. (a)-(d) ............................................... 1

Pen. Code, § 1202.4, subd. (b) ...................................................... 2

Pen. Code, § 1202.45 ................................................................. 2

Pen. Code, § 1464 .................................................................... 2

Pen. Code, § 1465.8, subd. (a)(1) ................................................... 2

## STATEMENT OF THE CASE

In an amended information filed by the Los Angeles County District Attorney, appellant was charged with the following crimes: making a criminal threat (Pen. Code,[1] § 422; count 1) and stalking/threatening another person (§ 646.9, subd. (a); count 2). (CT[2] 55-56.) As to counts 1 and 2, it was further alleged that: (1) appellant had two[3] serious or violent felony convictions or juvenile adjudications within the meaning of California's Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)); and (2) appellant served two prior prison terms within the meaning of section 667.5, subdivision (b). (CT 56.) Appellant pleaded not guilty to counts 1 and 2 and denied the special allegations. (CT 51.)

Appellant's motion to bifurcate the prior conviction allegations was granted.[4] Trial was by jury. (CT 64.) The jury found appellant guilty of counts 1 and 2. (CT 110-112.) Appellant waived a jury trial and admitted all the prior convictions alleged in the information. (CT 112-113; 2RT 668-675.)

The trial court sentenced appellant to state prison for a total of eight years four months. (CT 120.) On count 1, he was sentenced to six years calculated as the upper term of three years, plus three years under the Three Strikes Law. (CT 117.) On count 2, he was sentenced to 16 months calculated as one-third the middle term of 24 months (or eight months),

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

[2] Because there is only one volume of the clerk's transcript, respondent will not refer to a volume number.

[3] One prior conviction allegation appears to have been stricken by interlineation. The record does not indicate when, or by whom, this change was made.

[4] The Reporter's Transcript does not include appellant's motion to bifurcate the prior conviction allegations.

plus eight months under the Three Strikes Law, consecutive to count 1.
The court further sentenced appellant to one year under section 667.5,
subdivision (b), to run consecutively with counts 1 and 2.  (CT 118.)  The
court imposed a $20[5] court security assessment (§ 1465.8, subd. (a)(1)), a
$1,600 parole restitution fine that was stayed pending completion of parole
(§ 1202.45), a $1,600 restitution fine (§ 1202.4, subd. (b)), and a $160
penalty assessment and surcharge (§ 1464; Gov. Code, § 76000).  (CT 118,
121; RT 909.)  The court awarded 364 days of presentence custody credit.
(CT 121.)

Appellant filed a timely notice of appeal on September 11, 2008.  (CT
122.)

## STATEMENT OF FACTS

### A.  Prosecution Evidence

On August 13, 2007, at approximately 11:00 p.m., Araceli Rossi was
making a left turn onto East La Jara Street in Long Beach, California.  (2RT
332.)  As she did so, appellant yelled "Hey" in an angry and hostile voice.
Araceli tried to ignore him.  (2RT 332-333.)  Araceli had never seen
appellant before and had no idea why he was yelling at her.  (2RT 333-
334.)  Araceli felt "really scared."  She glanced in her rearview mirror
because she had a "weird feeling" and saw that appellant was backing out
of an intersection.  Because she was concerned that appellant was going to
follow her, Araceli sped up and proceeded to her street, Saint Francis Place,
a cul-de-sac.  Araceli parked in her driveway, turned off her headlights, and
ducked so that appellant might not notice her.  Appellant drove by her
house without stopping.  Araceli quickly ran into her house and watched for

---

[5] Although the court orally pronounced a single $20 court security
assessment, the abstract of judgment correctly imposed a $20 fee for each
conviction, for a total of $40.  (CT 121.)

appellant from a window. (2RT 333.)  She saw appellant drive down her street several times.  Araceli was very scared "because obviously I felt he was looking for me." (2RT 334.)  She told her son, J.R., that appellant had followed her home and pointed out his car. (2RT 481.)

Approximately 30 minutes later, Araceli and J.R. left the house to drive Araceli's other son to work. (2RT 334-335, 482.)  As she was making a right turn out of Saint Francis Place, she stopped and mentioned the incident with appellant to a neighbor. (2RT 335-336, 482.)  The neighbor suggested that she call the police.  While Araceli was speaking to the police on her neighbor's cellular phone, appellant drove down her street again.  He drove very slowly next to Araceli's car and had "this smirk on his face." (2RT 335, 482.)  J.R. also identified appellant as the driver. (2RT 482-483.)  Araceli was terrified, especially since appellant knew where she lived. (2RT 336.)  Appellant drove by again.  Araceli was still on the phone with the police and mentioned that appellant was back. (2RT 338.)

When Araceli returned from dropping off her son, she saw that the police had pulled appellant over on Downey Avenue, close to Araceli's neighborhood.  Araceli thought "that was the end of it." (2RT 338, 484.)  The police warned appellant that he was scaring Araceli. (2RT 534-535.)

On October 26, 2007, at approximately 8:00 p.m., appellant left a note on Araceli's car, and J.R. got a "good look" at him. (2RT 339, 342, 485.)  Appellant and J.R. made eye contact.  Appellant stared at J.R. with a "scary face" as he walked away. (2RT 485.)  J.R. ran into the house in a panic and told Araceli that appellant left a note on her car. (2RT 340, 484-485, 487.)  The note said, "I love you, Tess.  Kiss." (2RT 498.)  No one by the name of "Tess" lived at Araceli's house. (2RT 462.)

Araceli's daughter, Senele, and J.R. drove around the neighborhood to see if appellant was still around. (2RT 341-342, 487.)  J.R. noticed

3

appellant's car behind them on Downey Avenue. (2RT 487-489.) At some point, appellant's car and Senele's car were parallel to each other. J.R. made eye contact with appellant. (2RT 488.) Appellant seemed to recognize J.R. (2RT 490.) Senele made a left turn on Downey Avenue while appellant continued straight on Downey. (2RT 488-489.)

When they returned to the Rossi home, J.R. and Senele told Araceli that they had seen appellant's car. (2RT 343.) Araceli called the police, who said they could not do anything. (2RT 343-344.) The next day, Araceli prepared a flyer to put up in the neighborhood alerting neighbors to call the police if they saw appellant's car. Araceli's husband, George Rossi, put the flyers on all the mailboxes in the Saint Francis Place neighborhood. (2RT 344.) That same day, Araceli received another note on her car windshield. (2RT 346.) The note said, "Tess, I love you. Can I talk to you? It will help us. So we can talk and so forth. All I live for is to talk to you."[6] (2RT 344-346, 499, 607.)

On October 28, 2007, at approximately 2:35 p.m., George and J.R. were driving near East Saint Francis Place and Downey Avenue. (2RT 463, 490.) J.R. noticed appellant's car and alerted his father. (2RT 464, 490.) Appellant was driving out of the Saint Francis Place cul-de-sac. (2RT 464.) George knew that appellant was the person who had been following his wife. (2RT 464, 490.) Appellant made a left turn onto La Jara Street and George followed him so that he could record his license plate number. (2RT 464-465, 490-491.) Appellant stopped to make a right turn at Artesia Boulevard and George pulled up next to him. (2RT 465, 491.) Appellant was wearing sunglasses and a baseball cap. (2RT 470-

---

[6] This note was admitted into evidence and displayed to the jury on an overhead projector. The note, however, was not read into the record. The prosecutor quoted the text of the note during his closing argument. (2RT 344-346, 607.)

471, 531-532.)  George yelled at appellant, "What the fuck are you doing . . . coming over to my house?"  (2RT 465, 491, 507.)  Appellant responded very sarcastically, "I'm not coming around your house."  (2RT 465, 491-492.)  Appellant's statement sounded threatening.  (2RT 466.)  George was angry about what appellant had been putting his family through and felt threatened by appellant.  (2RT 466, 492.)  George was holding an ice cream cone, which he threw at appellant but missed.  The ice cream cone landed on appellant's passenger seat.  Appellant said, "I'm going to fuck you up."  (2RT 348, 465, 492.)  Appellant picked up the ice cream cone and threw it back at George as George was driving away.[7]  The ice cream cone hit George's van.  J.R. wrote down appellant's license plate number on a napkin before appellant drove away.  (2RT 465, 492.)  George decided not to follow appellant because he was scared and worried that appellant might have a gun.  (2RT 465-467.)  When George told Araceli about the incident, she was "fearful because now he ha[d] confronted my husband, and my child was in the car."  (2RT 348.)

On October 30, 2007, at approximately 10:50 a.m., Araceli's neighbor, Wendell Oien, saw a car that matched the description of appellant's car near Saint Francis Place.  (2RT 323-326.)

On November 1, 2007, at approximately 6:00 p.m., George was driving home and noticed appellant driving away from the direction of the Rossi's home.  (2RT 468.)  Because of his encounter with appellant a few days earlier when appellant said he would "fuck him up," George felt threatened when he saw appellant.  (2RT 471.)  He thought appellant was "coming around to stalk us, my wife and my whole family" and that "he

---

[7] J.R. testified that George did not drive away until after being hit with the ice cream cone.  (2RT 492.)

5

might have a gun in his car." (2RT 471-472.)  George called the police. (2RT 468, 472, 511.)

On November 1, 2007, Detective Shawn Irving was investigating the Rossi complaints and looking for appellant and appellant's car.  (2RT 509-510.)  Detective Irving drove to 2942 Yearling in Lakewood, California in an attempt to find appellant because appellant's driver's license had listed the Yearling address.  Appellant was not there when Detective Irving arrived.  However, Detective Irving informed an occupant at 2942 Yearling that if he saw appellant, he should call Detective Irving.  (2RT 510.) Detective Irving then responded to a call at the Rossi's house.  (2RT 511.)

George told Detective Irving that at 6:55 p.m., a few minutes before Detective Irving arrived, he saw appellant driving away from his home as George was driving towards his home.  As Detective Irving spoke with George, his partner received a call from appellant.  (2RT 511-512.) Detective Irving took the call and said he needed to confirm that the person he was speaking with was truly appellant.  Appellant agreed to meet Detective Irving at approximately 10:00 p.m. at North Police Station. Appellant said that he could not meet Detective Irving immediately because he was in Orange County.  (2RT 512.)

Detective Irving decided to return to the Yearling address.  (2RT 512.) When he arrived, he saw appellant's car parked illegally in front of the house; appellant was at the front door.  The driver's side door of appellant's car was open.  Detective Irving asked appellant why he had lied about being in Orange County.  Appellant responded that he had not lied and was planning to meet Detective Irving later.  Detective Irving's partner, Officer Toby Benskin, then searched appellant's car.  (2RT 513, 518.)  Officer Benskin found two handwritten notes on yellow-lined paper; each note began with the word "Tess."  (2RT 518.)  Officer Benskin also found a pair of binoculars and a Google map printout depicting the address on Yearling

and the Rossi's address on Saint Francis Place and indicating that there were 1.7 miles between the two. (2RT 519.)

That same day, Detective Rocio Gonzalez of the Long Beach Police Department conducted a secondary search of appellant's car at the impound yard. (2RT 526-527.) She found four baseball caps and a pair of sunglasses. (2RT 528.) Detective Gonzalez then interviewed Araceli, George, and J.R. and showed a six-pack photographic lineup to each of them. (2RT 528-529.) Within a few seconds, Araceli identified appellant as the person who followed her, left disturbing notes, drove through her neighborhood, and threatened her husband. (2RT 350-351, 531.) George identified appellant's photograph and another similar-looking photograph in the lineup; he was not sure which one was appellant because appellant had been wearing a baseball cap and dark glasses during the October 28 altercation. (2RT 470-471, 479, 531-532.) J.R. identified appellant. (2RT 492-493, 532-533.)

On November 2, 2007, Detective Gonzalez interviewed appellant in a jail interview room. (2RT 533-534.) She advised appellant of his *Miranda*[8] rights. Detective Gonzalez then questioned appellant about the altercation with George. She asked, "Did you tell the man you were going to beat him up?" Appellant responded, "Well, yeah. Well, when he crashed into me, I did." Detective Gonzalez asked if appellant had been in the area of South and Downey Avenue on any other occasion. (2RT 534.) Appellant said that he was in the area about a month ago when he was pulled over by the police for "following and scaring a lady or something." (2RT 534-535.) Detective Gonzalez then told appellant that there were complaints that he had been following a woman around in the area of

---

[8] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed. 694].

7

Downey and South and leaving notes on her car window. Appellant said, "I don't leave no notes on anyone's car." Detective Gonzalez showed appellant the notes that had been left on Araceli's windshield and the notes that were found in appellant's car. Appellant acknowledged that he had written the notes although he contended that all the notes had been taken from his car. (2RT 535-536.) Appellant said his wife's name was Tericita, and her nickname was "Tess" or "Tessie." (2RT 540.) Appellant said that his wife wanted to see him but was unable because she had a restraining order against him. (2RT 549.)

In general, Araceli felt "terrorized" by appellant. She was "always looking over [her] shoulder. I would not be home unless someone was home. . . . I have been very fearful." When Araceli had to be home alone, she locked all the doors in her house, including her bedroom door. She installed an alarm system in her home, took self-defense courses, and sought counseling. (2RT 348-349.)

### B.   Defense Evidence

Appellant did not present any evidence in his behalf. (2RT 552.)

## ARGUMENT

### I.   SUBSTANTIAL EVIDENCE SUPPORTED THE JURY'S VERDICT FOR MAKING CRIMINAL THREATS

Appellant contends that insufficient evidence supported the jury's conclusion that appellant criminally threatened Araceli's husband, George. Appellant is mistaken. Because appellant had a history of harassing Araceli and her family and because appellant threatened Araceli's husband, this conviction is amply supported by the evidence.

### A.   Relevant Proceedings

At the conclusion of trial, defense counsel made a section 1118.1 motion, arguing that the prosecutor had not proven either criminal threats or

stalking beyond a reasonable doubt. (2RT 554.) On count 1 (criminal threats), defense counsel argued that the incident with George was brief and no weapons were found. He further argued that contact was initiated by an aggressive-seeming George, not appellant, and that there was no evidence that appellant knew "who this man was that threw the ice cream cone." Defense counsel concluded that George did not have sustained fear for his safety, nor was there an immediate prospect of execution of the threat, because George "instigated the actions and, in fact, my client drove away. There's no . . . imminence there, your Honor." (2RT 557.)

The prosecutor argued, to the contrary, that the statement, "I'm going to fuck you up," implied an intent to inflict great bodily injury. (2RT 554.) In addition, the prosecutor argued that section 422 was written in a "sliding scale" fashion because the words "unequivocal, unconditional, immediate, and specific" were not used absolutely but rather were preceded by the word "so." Therefore, the circumstances of the threat were very important. In this case, "[o]ne cannot ignore the overarching circumstances of the defendant's persistent harassment of the . . . victim and her family." In addition, the police had stopped appellant and told him he was scaring Araceli; yet appellant continued to show up in her neighborhood. In that context, when the victim's husband approached him and confronted him about this, issuing that kind of threat is all the more threatening." (2RT 555.) The prosecutor concluded that this was the type of terrorizing conduct proscribed by section 422. (2RT 556.)

The court emphasized that section 422 does not require an intent to carry out the threat. (2RT 556.) The court then ruled as follows:

> I think you made the best argument that you could make, but in my view, there's sufficient evidence for this jury to find that all the elements have been proved. There's circumstantial evidence as well as direct evidence, and there's a history in this case. When you put it together, that is something that the jury could

reasonably find beyond a reasonable doubt he's guilty of that.
[¶] . . . [¶] Your motion is denied.

(2RT 558.)

On count 2, defense counsel argued that the case was one of mistaken identity. Appellant, defense counsel contended, "was just sincerely trying to locate his wife that he missed." (2RT 558-559.) The contact was "very limited" because only two notes were left. (2RT 559.)

The court responded that none of the facts mentioned by defense counsel meant that "the jury couldn't come to the conclusion beyond a reasonable doubt that the defendant is guilty of that crime. . . . [¶] It's before the jury. But certainly they can conclude that he committed that crime against her, the stalking crime, with its elements." (2RT 559.)

**B.    Standard of Review[9]**

An appellant raising a claim that the evidence was insufficient to support his or her conviction bears a "massive burden" because this Court's "role on appeal is a limited one." (*People v. Akins* (1997) 56 Cal.App.4th 331, 336.) In reviewing the sufficiency of evidence, the reviewing court asks whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Frye* (1998) 18 Cal.4th 894, 953, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Mayfield* (1997) 14 Cal.4th 668, 767; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 61 L.Ed.2d 560].)

An appellate court determines "whether from the evidence, including all reasonable inferences drawn therefrom, there is any substantial evidence of the existence of each element of the crime charged. [Citations.]"

---

[9] This standard of review applies equally to Argument II, below.

(*People v. Crittenden* (1994) 9 Cal.4th 83, 139; see also *People v. Mincey* (1992) 2 Cal.4th 408, 432; *People v. Reed* (2000) 78 Cal.App.4th 274, 279.)  When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trier of fact.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139.)

### C.   Substantial Evidence Supported Appellant's Conviction for Criminal Threats

Section 422 makes it a crime to "willfully threaten to commit a crime which will result in death or great bodily injury to another person."  There are five elements that must be established to find that a defendant has made a criminal threat.  They are:

> (1) that the defendant willfully threatened to commit a crime which will result in death or great bodily injury to another person; (2) that the defendant made the threat with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out; (3) that the threat, which may be made verbally, in writing, or by means of an electronic communication device, was on its face and under the circumstances in which it was made, so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat; (4) that the threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety; and (5) that the threatened person's fear was reasonable under the circumstances.

(*People v. Toledo* (2001) 26 Cal.4th 221, 227-228, internal quotations omitted, citing *People v. Bolin* (1998) 18 Cal.4th 297, 337-340 & fn. 13.) Appellant argues that there was insufficient evidence of elements (2), (3),

(4), and (5).[10]   (AOB 8-16.)  To the contrary, substantial evidence

supported each element.

### 1.   Appellant made his threat with the specific intent that it be taken as a threat

Appellant contends there was insufficient evidence to show he had the

necessary specific intent to threaten George, as required by the second

element above.  (AOB 13-15.)  However, under section 422, to constitute a

criminal threat the person making it must have the specific intent that it be

taken as a threat, although the individual need not intend to actually carry it

out.  (*People v. Toledo*, *supra*, 26 Cal.4th at p. 228; *In re David L.* (1991)

234 Cal.App.3d 1655, 1659; see also § 422.)  In evaluating intent, the

setting in which the remarks are made must be considered.  (*People v. Felix*

(2001) 92 Cal.App.4th 905, 913-914.)

Here, appellant threatened to "fuck [George] up."  (2RT 348, 465,

492.)  He later admitted to Detective Gonzalez that he told George he was

going to "beat him up."  (2RT 534.)  Appellant's tone during the encounter

was sarcastic and threatening.  (2RT 466-467.)  Moreover, appellant had

shown that he was unpredictable and did not respond to authority because

he continued to harass and leave notes for George's wife despite police

warnings.  (2RT 323-326, 340, 346, 348, 468, 471-472, 484-485, 487, 534-

535.)  He also lied to George about lurking around the Rossi's home.  (2RT

---

[10] Appellant does not appear to dispute the first element -- that he
willfully threatened to commit a crime which would result in death or great
bodily injury.  Respondent acknowledges that appellant made a conclusory
statement that "there was no substantial evidence . . . that appellant . . .
intended to commit a crime resulting in death or great bodily injury to
'someone.'"  (AOB 14.)  However, this statement falls under appellant's
argument concerning specific intent (section I(C)(2)), and the statement
does not utilize the key term "willful."

465, 491-492.) From this, the jury could reasonably have inferred that appellant intended his statement to be taken as a threat.

   2.   **Appellant's threat was "unequivocal, unconditional, immediate, and specific"**

   Appellant challenges the third element of criminal threats, contending that his threat was not "unequivocal, unconditional, immediate, and specific." (AOB 11-13.)  Appellant misconstrues this requirement.  "To constitute a criminal threat, a communication need not be *absolutely* unequivocal, unconditional, immediate, and specific.  The statute includes the qualifier 'so' unequivocal, etc., which establishes that the test is whether, in light of the surrounding circumstances, the communication was *sufficiently* unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 861, italics in original.)  "The use of the word 'so' indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim." (*People v. Bolin, supra,* 18 Cal.4th at p. 340, internal quotations and citations omitted.)  "The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim." (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157-1158; see also *In re Ryan D., supra,* 100 Cal.App.4th at p. 860.)  Surrounding circumstances include, among others, the prior relationship of the parties and the manner in which the communication was made. (*In re Ryan D., supra,* 100 Cal.App.4th at p. 860; see *People v. Mosley* (2007) 155 Cal.App.4th 313, 324 [parties' history may be a relevant circumstance].)

The focus of the statute is not on the precise words used, but whether the threat and surrounding circumstances communicated a gravity of purpose and immediate prospect of execution to the victim. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340; *People v. Stanfield, supra*, 32 Cal.App.4th at pp. 1157-1159; see also *People v. Mosley, supra*, 155 Cal.App.4th at p. 324.) This accords with section 422's purpose, which is to target "those who try to instill fear in others." (*People v. Felix, supra*, 92 Cal.App.4th at p. 913; see also *People v. Solis* (2001) 90 Cal.App.4th 1002, 1013 ["In enacting section 422 . . ., the Legislature declared that every person has the right to be protected from fear and intimidation."].)

Here, appellant told George "I'm going to fuck you up." (2RT 348, 465, 492.) On its face, this was a threat that was "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." (See § 422.) Although appellant argues that his statement was "not a threat to commit any crime," (AOB 11-12) the plain meaning of the statement is that appellant intended to physically harm George. That appellant intended to physically harm was also confirmed by appellant during his interview with Detective Gonzalez. (2RT 534.) Moreover, while appellant claims that the threat lacked immediacy (AOB 11-12), the threat conveyed "an immediate prospect of execution" because it was made in the present tense, and appellant was speaking directly to George when he threatened to harm him. (2RT 465, 492; see § 422.)

Appellant also argues that his statement was not a serious threat because "George [w]as the aggressor and appellant [w]as the target" and because appellant was not armed. (AOB 11-12.) Appellant overlooks the fact that he had just returned from stalking the Rossi's neighborhood. (See 2RT 464.) Appellant also ignores that, in the context of appellant's relationship with the Rossis, he was the aggressor. He followed Araceli or

lurked around her neighborhood on at least six occasions, and left bizarre love notes for her on at least two occasions. (2RT 323-326, 332-338, 340, 344-346, 348, 468, 471-472, 484-485, 487, 607.) He made her family feel threatened and scared. (2RT 465-467, 471-472, 485, 492.) Although George may have initially instigated the conversation with appellant, appellant became the aggressor when he threatened George with bodily violence and threw an ice cream cone at George as he was attempting to avoid further confrontation by driving away. (See 2RT 465.)

Moreover, appellant's reliance on *In re Ricky T.* (2001) 87 Cal.App.4th 1132 to support his claim that his threat lacked credibility is unavailing. (See AOB 11-13.) In that case, a high school student became angry at his teacher and said, "'I'm going to get you'" in response to being hit in the head with a door. (*In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1135.) The court found that this was not a true threat, in part, because there was no evidence that defendant and the victim had any prior history of disagreements. (*Id.* at p. 1138.) Here, in contrast, appellant's threat was not an isolated incident. Appellant had been harassing Araceli, and by extension the Rossi family, from August 13, 2007, until he was arrested on November 1, 2007. (2RT 323-326, 332-338, 340, 344-346, 348, 465-468, 471-472, 484-485, 487, 492, 607.) Because of this harassment, it was reasonable to conclude that Araceli's husband, George, had a conflict with appellant, and equally reasonable to conclude that appellant would expect George to have a conflict with him.

Viewing appellant's threat "on its face and in the circumstances," there was substantial evidence supporting the jury's verdict that the threat was "so unequivocal, unconditional, immediate, and specific as to convey to [George], a gravity of purpose and an immediate prospect of execution of the threat." (See § 422; *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1217.)

3.    **Appellant placed George in sustained fear**

Appellant claims that the prosecution failed to prove the subjective and objective elements of the "reasonable sustained fear" requirement of section 422. (AOB 15-16.) Specifically, appellant argues that "appellant's remark could not possibly have conveyed to George an immediate prospect it would be carried out or rendered any sustained fear he may have had reasonable as a matter of law." (AOB 16.) Respondent disagrees.

"Sustained fear" refers to fear that extends "beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Ibid.*; see also *People v. McCray* (1997) 58 Cal.App.4th 159, 172; *People v. Garrett* (1994) 30 Cal.App.4th 962, 967; contrast *In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1137 ["The lack of surrounding circumstances information is striking."].)

Here, the evidence showed that appellant told George, "I am going to fuck you up." (2RT 358, 465, 492.) There was nothing "vague or ambiguous" (*People v. Solis*, *supra*, 90 Cal.App.4th at p. 1014) about appellant's express desire to beat up George. (See 2RT 534.) Indeed, appellant "personally communicat[ed] [this] threat to the victim . . . ." (*In re Ryan D.*, *supra*, 100 Cal.App.4th at p. 861; see also 2RT 464-465, 492.)

Appellant asserts that "reasonable sustained fear" was lacking because the encounter was "brief, non-violent, and nothing more than an exchange of expletives and posturing." (AOB 16.) However, even assuming provocation by George, appellant's threat was credible because of appellant's history of stalking George's wife and lurking in the Rossi's neighborhood. Moreover, George was scared for a "not insubstantial" period of time. (See *People v. Allen*, *supra*, 33 Cal.App.4th at p. 1156, fn. 6.) After appellant threatened him, George decided to stop following

appellant because he was scared and concerned that appellant might be armed. (2RT 465-467.) Four days later, George saw appellant in his neighborhood and again felt threatened. He was worried that appellant was "coming around to stalk us, my wife, and my whole family" and might have a gun. (2RT 471-472.) George was so frightened, in fact, that he called the police. (2RT 468, 472, 511.) This evidence substantially proved that not only was George subjectively fearful of appellant, but also that his fear was not merely "momentary, fleeting, or transitory." (*People v. Allen, supra,* 33 Cal.App.4th at p. 1156.) Finally, George's fear was objectively reasonable because appellant had a history of erratic and terrifying behavior toward the Rossis. He continued to stalk George's wife and profess his love for her despite being reprimanded by the police, and leered frighteningly at Araceli and J.R. (2RT 323-326, 335, 340, 346, 348, 468, 471-472, 482, 484-485, 487, 534-535.) In this context, when appellant threatened to beat up George, it was entirely reasonable for George to feel scared.

The nature of the threat, appellant's history of stalking George's wife, and George's testimony that he was frightened and concerned for the safety of his family all substantially supported the jury's finding that George experienced sustained fear within the meaning of section 422.

## II. SUBSTANTIAL EVIDENCE SUPPORTED THE JURY'S VERDICT FOR STALKING

The elements of the crime of stalking are: (1) repeatedly following or harassing another person, and (2) making a credible threat (3) with the intent to place that person in reasonable fear of death or great bodily injury. (*People v. Ewing* (1999) 76 Cal.App.4th 199, 210; § 646.9, subd. (a).)

Appellant contends that insufficient evidence supported the second and third elements.[11] (AOB 17.) Appellant's contentions lack merit.

## A.   Appellant Made a Credible Threat

"Section 646.9 does not require that the defendant actually intend to carry out the threat. It is enough that the threat causes the victim reasonably to fear for [his or] her safety or the safety of [his or] her family, and that the accused makes the threat with the intent to cause the victim to feel that fear." (*People v. Falck* (1997) 52 Cal.App.4th 287, 297-298; see also *People v. McClelland* (1996) 42 Cal.App.4th 144, 154.) Moreover, under section 646.9, subdivision (g), a credible threat may be written, verbal, one "implied by a pattern of conduct," or a combination of the three. (*People v. McClelland, supra,* 42 Cal.App.4th at p. 153.) The target of the threat need only fear for the target's safety or that of his or her family; the threat need not be against the life of, or threaten great bodily injury to, the target. (*People v. Zavala* (2005) 130 Cal.App.4th 758, 767.) To determine whether a threat occurred, the entire factual context, including the surrounding events and listener reaction, must be considered. (*People v. Falck, supra,* 52 Cal.App.4th at p. 298.)

Appellant suggests that his interactions with Araceli and her family were not violent enough to constitute credible threats. (AOB 19-20.) However, a credible threat does not require that the victim or the victim's family actually be threatened with death or great bodily injury. (*People v. Zavala, supra,* 130 Cal.App.4th at p. 767.) Here, appellant engaged in an alarming pattern of harassment, which a trier of fact could reasonably conclude was threatening. (See § 646.9, subd. (g).) Appellant accosted Araceli while she was driving and said, "Hey," in an angry, hostile way.

---

[11] Appellant does not appear to dispute the first element -- that he repeatedly followed or harassed another person.

(2RT 332-333.) He then proceeded to follow her home and stayed in her neighborhood even after she entered her house. (2RT 334.) He drove slowly by her car with a smirk on his face. (2RT 335, 482.) The police even told appellant that he was scaring Araceli. (2RT 534-535.) However, appellant continued to harass her. (2RT 323-326, 340, 346, 348, 468, 471-472, 484-485, 487.) He made clear that he knew where she lived and which car she drove. (See 2RT 336, 340, 346, 484-485, 487.) He left strange love notes on her car and drove around her neighborhood on various occasions. (2RT 323-326, 332-338, 340, 346, 348, 468, 471-472, 484-485, 487.) He told Araceli's husband that he would "fuck him up." (2RT 358, 465, 492.) Thus, appellant's contention that his threat was not credible is unavailing. In fact, Araceli was so alarmed by appellant's conduct that she barricaded herself in her home and tried not be alone. She also installed an alarm system in her house , took self-defense classes, and sought counseling. (2RT 348-349.) The jury could reasonably have concluded that Araceli feared for her safety and the safety of her family.

### B. Appellant Intended to Place the Victim in Reasonable Fear of Death or Great Bodily Injury

Appellant's argument that he had no specific intent to cause fear is equally unpersuasive. (See AOB 20-21.) The element of intent can rarely be proved directly and must usually be inferred from circumstantial evidence. (*People v. Falck, supra,* 52 Cal.App.4th at p. 299; see also *People v. Lyles* (1957) 156 Cal.App.2d 482, 486.) A reasonable jury could have inferred that appellant knew exactly what he was doing by continuing to harass Araceli on several occasions after being told by the police that he was scaring her. (See 2RT 323-326, 340, 346, 348, 468, 471-472, 484-485, 487, 534-535.) Appellant insisted on maintaining contact with Araceli even though she clearly was attempting to avoid him and although he had been warned to stay away. (2RT 348-349, 534-535.) Araceli's husband also

suggested to appellant that he should not come near their house. (See 2RT 465, 491, 507.) A reasonable jury could have inferred that by continuing to harass Araceli, appellant intended to intimidate and frighten her. (See *People v. Falck, supra*, 52 Cal.App.4th at p. 299.) In addition, appellant explicitly stated that he would beat up Araceli's husband, George. (2RT 358, 465, 492, 534.) Since Araceli now knew that appellant was capable of physical violence (2RT 348), the jury could have reasonably concluded that Araceli was a probable victim who feared for her own physical safety. When viewed in its entirety, the evidence substantially supports the jury's finding that appellant intended to place Araceli in reasonable fear of bodily harm or death.

## CONCLUSION

For the foregoing reasons, respondent respectfully requests that the judgment be affirmed in its entirety.

Dated:  May 7, 2009              Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
PAMELA C. HAMANAKA
Senior Assistant Attorney General
SARAH J. FARHAT
Deputy Attorney General


JULIE A. HARRIS
Deputy Attorney General
Attorneys for Respondent

JAH/cd
LA2008504055
50436499.doc

## CERTIFICATE OF COMPLIANCE

I certify that the attached **RESPONDENT'S BRIEF** uses a 13 point Times New Roman font and contains 6,019 words.

Dated:  May 7, 2009

EDMUND G. BROWN JR.
Attorney General of California


JULIE A. HARRIS
Deputy Attorney General
Attorneys for Respondent

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **People v. David M. Thimmes**                    No.:   **B210904**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>May 7, 2009</u>, I served the attached **RESPONDENT'S BRIEF** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Suite 1702, Los Angeles, CA  90013, addressed as follows:

**Lenore De Vita**
**Attorney at Law**
**P.O. Box 2544**
**Toluca Lake, CA  91610**
**(Attorney for Appellant Thimmes)**

**John A. Clarke**
**Clerk of the Court**
**Los Angeles County Superior Court**
**111 N. Hill Street**
**Los Angeles, CA  90012**
**<u>DELIVERED TO:</u>**
**<u>Hon. Charles D. Sheldon, Judge</u>**

**The Hon. Steve Cooley, District Attorney**
**Los Angeles County**
        **District Attorney's Office**
**Headquarters**
**210 West Temple Street, Suite 18000**
**Los Angeles, CA  90012-3210**
**<u>Attn.:  DDA Patrick O'Crowley</u>**

**CAP – LA**
**California Appellate Project (LA)**
**520 South Grand Avenue, 4th Floor**
**Los Angeles, CA 90071**

The one copy for the California Appellate Project was placed in the box for the daily messenger run system established between this Office and California Appellate Project (CAP) in Los Angeles for same day, personal delivery.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>May 7, 2009</u>, at Los Angeles, California.

| | |
|---|---|
| _____ | _____ |
| C. Damiani | |
| Declarant | Signature |

JAH/cd
LA2008504055
50436976.doc

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

THE PEOPLE OF THE STATE OF CALIFORNIA,

                            Plaintiff and Respondent,

vs.

DAVID M. THIMMES,

                      Defendant and Appellant.

2 Crim. **210904**

Superior Court
No.  NA076325

## APPELLANT'S PETITION FOR REVIEW

Lenore De Vita
State Bar #105577
P.O. Box 2544
Toluca Lake, CA. 91610
(323) 512-7313
Attorney for Petitioner/Appellant
David M. Thimmes

## TABLE OF CONTENTS

PETITION FOR REVIEW                                          1

JURISDICTION AND GROUNDS                                     2

ISSUES PRESENTED                                             3

STATEMENT OF THE CASE/FACTS                                  4

ARGUMENT IN SUPPORT OF PETITION                             5

CONCLUSION                                                  19

CERTIFICATION UNDER RULE 8.504                             20

APPENDIX I: July 13, 2009, Court of Appeal Opinion         21

## TABLE OF AUTHORITIES

### Cases

*In re David L.* (1991) 234 Cal.App.3d 1566 ...............................................11

*In re Ricky T.* (2001) 87 Cal.App.4th 1132 ..................................7, 9, 11, 13

*Jackson v. Virginia* (1979) 443 U.S. 307 ...............................................5, 18

i

*O'Sullivan v. Boerckel* (1999) 526 U.S. 838..............................................................2

*People v. Allen* (1995) 33 Cal.App.4th 1149 ...........................................................10

*People v. Alvarez* (2002) 27 Cal.4th 1161...............................................................12

*People v. Barnes* (1986) 42 Cal.3d 284.....................................................................6

*People v. Bolin* (1998) 18 Cal.4th 297..................................................................7, 11

*People v. Boyd* (1987) 43 Cal.3d 333.........................................................................5

*People v. Brooks* (1994) 26 Cal.App.4th 142..........................................................11

*People v. Falck* (1997) 52 Cal.App.4th 287.............................................................17

*People v. Felix* (2001) 92 Cal.App.4th 905.............................................................11

*People v. Garrett* (1994) 30 Cal.App.4th 962......................................................7, 12

*People v. Gudger* (1994) 29 Cal.App.4th 310....................................................11, 12

*People v. Halgren* (1996) 52 Cal.App.4th 1223......................................................16

*People v. Hernandez* (1988) 47 Cal.3d 315 ..............................................................6

*People v. Johnson* (1980) 26 Cal.3d 557...................................................................6

*People v. Kunkin* (1973) 9 Cal.3d 245 ......................................................................6

*People v. Martinez* (1997) 53 Cal.App.4th 1212 .............................................9, 10, 11

*People v. McCray* (1997) 58 Cal.App.4th 159.........................................................10

*People v. Mendoza* (1997) 59 Cal.App.4th 1333 ................................................10, 13

*People v. Ochoa* (1994) 6 Cal.4th 1199 ....................................................................6

*People v. Rowland* (1992) 4 Cal.4th 238,.............................................................5, 18

*People v. Stanfield* (1995) 32 Cal.App.4th 1152.............................7, 10, 12

*People v. Teal* (1998) 61 Cal.App.4th 277...............................................11, 12

*United States v. Kelner* (2d Cir 1976) 534 F.2d 1020...................................7

**Statutes**

Penal Code Section 422....................................................................6, 12, 14

Penal Code Section 646.9, subdivision (a)...................................................15

**Rules**

CALJIC No. 9.94................................................................................12

**Constitutional Provisions**

United States Constituion, Fifth Amendment .............................................18

United States Constituion, Sixth Amendment.............................................18

United States Constituion, Fourteenth Amendment....................................18

California Constitution, Article I, section 15 .....................................5

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff and Respondent, <br><br> vs. <br><br> DAVID M. THIMMES, <br> Defendant and Appellant. | 2 Crim. B210904 <br><br> Superior Court <br> No.  NA076325 |

## PETITION FOR REVIEW

**TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:**

Pursuant to California Rules of Court, rule 8.500, David M. Thimmes, appellant and petitioner hereby petitions this Honorable Court for review in the above entitled matter after the unpublished decision rendered by the Court of Appeal of the State of California, Second Appellate District, Division Six on July 13, 2009, affirming the judgment.  A copy of the opinion of the Court of Appeal is attached as Appendix I.

## JURISDICTION AND GROUNDS

This petition is filed pursuant to California Rules of Court, rule 8.500 to settle important questions of law. This Court obtains jurisdiction under rule 8.500 of those rules.

In addition, this petition is filed to preserve potential issues for federal habeas corpus review. (*O'Sullivan v. Boerckel* (1999) 526 U.S. 838 [all potential federal habeas claims must be submitted to the highest state court for discretionary review in order to preserve the claim for federal habeas corpus].)

## ISSUES PRESENTED

1       Can a conviction based on legally insufficient evidence survive appellate review?

2.      Can a conviction stand where the prosecution failed to prove beyond a reasonable doubt every element of the charged crime?

## STATEMENT OF THE CASE AND FACTS

For purposes of this petition, petitioner adopts the statements of the case and statement of facts contained in the opinion of the court of appeal, attached as an appendix.   Additional facts will be cited in the arguments where appropriate.

## ARGUMENTS IN SUPPORT OF PETITION FOR REVIEW

### I

### CAN A CONVICTION FOR THE CRIME OF UTTERING A CRIMINAL THREAT PURSUANT TO PENAL CODE SECTION 422 SURVIVE APPELLATE REVIEW WHERE THE EVIDENCE WAS LEGALLY INSUFFICIENT AS THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT EVERY ELEMENT OF THE CHARGED CRIME

Petitioner argued on appeal the evidence was legally insufficient for a reasonable juror to conclude the prosecutor had established, beyond a reasonable doubt, every element of the charged crime of making a criminal threat against George Rossi in violation of section 422.

The appellate court disagreed finding a "reasonable trier of fact could conclude that the elements of a violation of section 422 had been proved beyond a reasonable doubt." (Slip opn. p. 4.)

This court should grant review to consider whether a criminal conviction based on insufficient evidence reaches the level of proof beyond a reasonable doubt.

### A.    The Standard of Review

Under the due process clause of the Fourteenth Amendment and Article I, section 15 of the California Constitution, no person can be made to suffer a criminal conviction except upon proof sufficient to convince a trier of fact beyond a reasonable doubt of the existence of every element of the charged offense. (*Jackson v. Virginia* (1979) 443 U.S. 307, 315; *People v. Boyd* (1987) 43 Cal.3d 333, 346; *People v. Rowland* (1992) 4 Cal.4th 238, 269.)

Where the sufficiency of the evidence is challenged, the appellate court must determine whether any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt when viewing the record in a light most favorable to the prosecution. (*Jackson v. Virginia, supra,* 433 U.S. at pp. 318-319; *People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) In doing so, the appellate court must resolve the issue of sufficiency of the evidence in light of the whole record, and, the appellate court must judge whether the evidence of each of the essential elements of the offense of which the defendant stands convicted is substantial and of solid value. (*Id.,* at pp. 576-578; *People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Hernandez* (1988) 47 Cal.3d 315, 345-346; *People v. Ochoa* (1994) 6 Cal.4th 1199, 1206.) "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence, it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*People v. Kunkin* (1973) 9 Cal.3d 245, 250.)

## B.    Penal Code Section 422

Penal Code Section 422 provides in pertinent part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished ..."

## C.    Insufficiency of the Evidence in the Instant Case

Section 422 incorporates a mental element on the part of both the defendant and the victim. In order to establish a section 422 violation, the prosecution must establish the victim was in a state of "sustained fear," the nature of the threat, both on "it's face and under the circumstances in which it is made," was such as to convey to the victim an immediate prospect of execution of the threat and to render the victim's fear reasonable. (*People v. Garrett* (1994) 30 Cal.App.4th 962.) The prosecution must also establish the unequivocality, unconditionality, immediacy, and specificity are sufficiently present in the threat and surrounding circumstances to convey a gravity of purpose and immediate prospect of execution of the threat to the victim. (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157.)

### 1.     The Nature of Appellant's Remark

Section 422 demands the purported threat be examined "on its face and under the circumstances in which it was made." (*People v. Bolin* (1998) 18 Cal.4th 297, 339-340; *United States v. Kelner* (2d Cir 1976) 534 F.2d 1020, 1026-1027; *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137.)

The appellate court concluded petitioner willfully threatened to inflict great bodily in harm on George Rossi, that the threat was made with the specific intent it be taken as a threat, and "that the threat ... was 'on its face and under the circumstances in which it [was] made, ... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat.'" (*People v. Toledo, supra,* 26 Cal.4th at p. 288.)" (Slip opn. p. 5.)

In reaching this conclusion the appellate court relied on a scenario not supported by the record. The appellate court found the fact George was Araceli's husband "should have been evident to appellant" and as such it was reasonable to infer appellant regarded George as his "chief rival" for

7

Araceli's affections, and the "major obstacle" of appellant's goal of developing a romantic relationship with Araceli. (Slip opn. pp. 4-5)

There was no evidence petitioner knew George was Araceli's husband. George admitted he had never seen or met petitioner before their encounter. In fact it was George's son Jordan who identified petitioner and his car to George as the person who had been following Araceli. (2RT 464, 475-476.) There was no evidence petitioner saw George coming out of or entering the Rossi home, no evidence George identified himself as Araceli's husband, and no evidence petitioner ever saw George and Araceli together. No evidence was adduced at trial establishing petitioner should have known George was Araceli's husband.

Since petitioner did not know who George was, he could not have considered George to be his "chief rival" for Araceli's affection as the appellate court concluded. Also, there was no evidence petitioner's goal was to establish a romantic relationship with Araceli. (Slip opn. p. 5) To the contrary, the evidence suggested petitioner was trying to make contact with his estranged wife and family. The two notes petitioner left behind were both addressed to "Tess" which was petitioner's nickname for his wife "Tericita". (2RT 547, 607.) Neither note expressed any love, affection, or romantic interest in Araceli. Both notes expressed a desire to reconnect with Tess. The evidence established both Tess and Araceli are Filipino; both have dark hair, brown eyes, and are five feet tall. Petitioner told Officer Gonzalez he had been in the Rossi's neighborhood because he wanted to see his wife, his daughter, and his granddaughter. (2RT 544-548.)

The "threat" petitioner allegedly made to George Rossi, was "I'm going to fuck you up." On its face, the statement was not a threat to commit any crime much less one resulting in death or great bodily injury. Judging petitioner's verbal remark in the context of the circumstances

shows it lacked credibility as a serious, deliberate statement of purpose. There was neither immediacy nor specificity to the so-called "threat".

George admitted he initiated contact with petitioner when he followed petitioner in his van and pulled up alongside petitioner at a stop sign. George was the first one to use profanity when he angrily yelled at petitioner "What the fuck are you coming around my house for?" And, it was only after George threw his ice cream at petitioner intending to hit him, but missed, that petitioner said: "I'm going to fuck you up." The circumstances established George as the aggressor and petitioner as the target. (2RT 474-477.)

The evidence showed petitioner was merely responding to George's extremely aggressive behavior. George made the first contact, confronted petitioner in an angry manner, used profanity first, and assaulted petitioner. After responding to George's verbal assault, petitioner drove away throwing the ice cream at George's van. Apparently the "immediate prospect of execution" of petitioner's so called "threat" would have to wait until some unspecified time and place.

Further, petitioner's remark was ambiguous on its face and no more than a vague statement of possible retaliation without prospect of execution. (*In re Ricky T., supra,* 87 Cal.App.4th at p. 1137; *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1218.) Petitioner did not specify what "fuck up" meant, much less what it involved. The exchange between George and petitioner amounted to nothing more than an exchange of profanity and a display of male "chest thumping".

Unlike other cases upholding section 422 threats, petitioner and George had no prior history of disagreements or previous quarrels, nor had they addressed offensive remarks to each other. In fact, this was the first time they had met. (2RT 476.) Petitioner took no actions towards George after they exchanged words and drove away. (*People v. Mendoza* (1997)

59 Cal.App.4th 1333, 1341-1342, [Even though defendant's words themselves-"you fucked up my brother's testimony. I'm going to talk to some guys from [my street gang]"-did not articulate a threat to commit a specific crime resulting in death or great bodily injury, the jury was free to interpret the words spoken from all of the surrounding circumstances of the case. Defendant and victim had known each other for years because of their mutual association in criminal street gang. Two days earlier the victim had given damaging testimony against defendant's brother, whom the victim knew to be member of same gang, and the victim knew gang members were capable of violence and could retaliate against her for hurting fellow gang member.]; *People v. Martinez, supra,* 53 Cal.App.4th at pp. 1214-1216, [Defendant was extremely angry, cursing, and in close proximity when he threatened the victim. His actions and conduct after he made the threat gave meaning to his words implying his threats were serious.]; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1151-1154, [Defendant was armed, mobile, and "at large" when he threatened to kill the victim and her daughter.]; *People v. McCray* (1997) 58 Cal.App.4th 159, [Defendant damaged telephone line, trespassed, disturbed the peace, made annoying telephone calls, and had been violent towards the victim in the past.]; *People v. Stanfield, supra,* 32 Cal.App.4th at pp.1154-1157, [Defendant threatened that if her former attorney did not join her in bringing her "Universe Reform Party" into power, she would hire gang members to kill him.])

Petitioner's remark suggested no gravity of purpose; there was no evidence his words were accompanied by any show of physical violence. He did not threaten George or any member of George's family with physical harm. He did not exit his car and approach George. On the contrary, petitioner drove away. Petitioner and George shared no past as to give the words they exchanged special meaning. Since surrounding

circumstances can be used to show a section 422 threat has occurred, the absence of such circumstances is also meaningful in showing such a threat has **not** occurred. (*In re Ricky T., supra,* 87 Cal.App.4th at p. 1139.) In this case, there was no evidence of any circumstance occurring before, during, or after petitioner's statement, which would support a finding that a criminal threat had been uttered. Certainly there was no "threat" to commit a crime, which would have caused death or great bodily injury to George.

### 2.    Specific Intent

Section 422 requires the person making the threat must have the specific intent that the utterance be taken as a threat, but he need have no intent of actually carrying it out. (*People v. Felix* (2001) 92 Cal.App.4th 905, 911; *In re David L.* (1991) 234 Cal.App.3d 1566, 1658.) Thus, mere angry utterances are not enough to constitute a violation of section 422. (*People v. Teal* (1998) 61 Cal.App.4th 277, 281.)

*People v. Brooks* (1994) 26 Cal.App.4th 142, illustrates a case where the threat was unequivocal. There, the defendant put a gun into the victim's mouth and threatened to kill her if she testified. (*Ibid.*) *Brooks* also demonstrates the threat need not be unconditional, for there the threat would be executable only if she testified. In *People v. Bolin* (1998) 18 Cal.4th 297, 338, the court held the threat of death or great bodily injury need not be unconditional to be a violation of section 422.

The meaning of the defendant's threat must be gleaned from the words and all of the surrounding circumstances. (*People v. Martinez, supra,* 53 Cal.App.4th at p. 1218.) It is necessary to review the language and context of the threat to determine if the speaker had the specific intent the statement be taken as a threat. (*People v. Gudger* (1994) 29 Cal.App.4th 310, 321.) The focus of section 422 is whether the threat communicated a gravity of purpose and immediate prospect of execution of

the threat. (*People v. Stanfield, supra,* 32 Cal.App.4th 1152, 1159.)   In *People v. Garrett* (1994) 30 Cal.App.4th 962, the defendant's threat to put a bullet in his wife's head conveyed gravity of purpose and immediate prospect of execution because of his past beatings of her, her knowledge he kept a gun in the house, and her knowledge that years before he had been convicted and imprisoned for voluntary manslaughter. (*Ibid.*)

In *People v. Gudger, supra,* 29 Cal.App.4th 310, the defendant threatened a judge through another judge's secretary saying she would buy a gun and would personally come into the courtroom and shoot and kill the judge if the judge did not rule in her favor. (*Id.* at p. 314.)   The appellate court found this was not just an intemperate, overly dramatic, and inartful request to change judges; the threats went beyond hyperbole or an emotional request to disqualify a judge and constituted true threats within the meaning of the statute. (*Id.* at p. 312.)

In petitioner's case, there was no substantial evidence, absent petitioner's "mere angry utteranc[e]" that petitioner intended his statement be considered a threat or that he intended to commit a crime resulting in death or great bodily injury to "someone." (*People v. Teal, supra,* 610 Cal.App.4th at 281.)

Detective Gonzalez interviewed petitioner at the men's jail and asked him about the incident involving the ice cream.   At trial, Gonzalez testified petitioner told her he told George he was going to "beat up on him".   Appellant made this remark after George "tried to crash into [him]." (RT 537-538.)   California law is clear that the corpus delicti, or body of the crime, must be proved by evidence independent of the extrajudicial statements of the defendant. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1169, and cases cited therein.)   Specific intent is an element of the crime of making a criminal threat.     (Pen. Code §422; CALJIC No. 9.94.) Gonzalez's testimony was insufficient to establish petitioner had the

requisite specific intent when he made his statement and that he meant his statement to be taken as a threat.

There was nothing about the circumstances surrounding petitioner's vague statement from which the jury could have reasonably concluded petitioner had uttered a criminal threat.

### 3.    Sustained Fear

The prosecution must prove beyond a reasonable doubt the threat be such as to cause a reasonable person to be in sustained fear for his personal safety. This phrase has both an objective and a subjective component. "A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." (*In re Ricky T., supra*, 87 Cal.App.4th at p. 1140.)

The words "sustained fear" in section 422 mean a "period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen, supra*, 33 Cal.App.4th at p. 1156.) In *People v. Allen*, the court found that "[fifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422." (*Id.*, at p. 1156.) In *People v. Mendoza, supra*, 59 Cal.App.4th at p. 1342, the victim was in fear for 15 to 30 minutes after hearing a threat before the police arrived; this was sufficient time to establish "sustained fear."

The encounter in petitioner's case was brief, non-violent, and nothing more than an exchange of expletives and posturing. The alleged victim initiated the contact, uttered the first profanity, and threw the first ice cream. Taking into consideration the circumstances under which the retorts were exchanged, petitioner's remark could not possibly have conveyed to George an immediate prospect it would be carried out or rendered any

sustained fear he may have had reasonable as a matter of law. George testified he felt "kind of scared" by the manner in which petitioner denied coming over to his house and by petitioner's remark. (RT 466-467.) "Kind of scared" is not sustained fear as define by section 422.

### D.     Conclusion

Since petitioner never made a threat to commit a crime which would result in death or great bodily injury, and arguably even if his remark was considered a threat there was never any realistic immediate prospect petitioner would carry it out, since petitioner lacked the specific intent his statement be taken as a threat, and since George could not have been reasonably in sustained fear as a matter of law, the prosecution failed to prove beyond a reasonable doubt critical elements of the crime defined by Penal Code Section 422. Petitioner was simply reacting to George's aggressive confrontation, nothing more.

This court should grant review to determine if a conviction based on legally insufficient evidence can withstand appellate review.

## II

## CAN THE CONVICTION IN COUNT 2 STAND WHEN THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT PETITIONER MADE A "CREDIBLE THREAT" PURSUANT TO PENAL CODE SECTION 646.9

Petitioner argued on appeal the evidence was legally insufficient for a reasonable juror to conclude the prosecutor had established, beyond a reasonable doubt, every element of the charged crime of stalking in violation of section 646.9.

In petitioner's case there was no evidence petitioner made any express threat, much less any "credible threat" with the intent to place the victim in reasonable fear for her safety or the safety of her immediate family.

The appellate court disagreed finding a "reasonable trier of fact could find beyond a reasonable doubt that appellant's pattern of conduct implied a threat made with both the apparent ability to carry it out and the intent to place Araceli in reasonable fear for her safety and the safety of her family." (Slip opn. p. 7)

### A.   The Standard of Review

The standard of review for sufficiency of the evidence was addressed in Argument I, subheading "A.  The Standard of Review", ante, pp. 5-6 and is not repeated here, rather it is incorporated fully by this reference.

### B.   Penal Code Section 646.9

Penal Code Section 646.9, subdivision (a) states: "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to

place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, ... ."

Subdivision (g) defines "credible threat" as a "verbal or written threat, ... or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target to reasonably fear for his or her safety or the safety of his or her family. ..."

## C.    The "Credible Threat" Element and Applicable Law

An element of section 646.9, subdivision (a) requires the defendant make a "credible threat" with the specific intent of making the threatened person reasonably fear for his or her safety.  The stalking statute defines "credible threat" as "a verbal or written threat, ... or a threat implied by a pattern of conduct ... made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family."  (Pen. Code §646.9, subd. (g).)  Although the prosecution need not prove the defendant had the intent to actually carry out the threat, the evidence must show the defendant made the threat "with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family." (*Id.*)

Stalking is a specific intent crime because the perpetrator must specifically intend to place the victim in reasonable fear.  (*People v. Halgren* (1996) 52 Cal.App.4th 1223, 1230-1231.)  Accordingly, it is the perpetrator's intent not the actual conduct engaged in which can trigger a stalking allegation. (*Id.* at p. 1231.)  Nevertheless, in determining whether

a threat was made, a fact finder may consider the entire factual context including the surrounding events and the reactions of any listeners. (*People v. Falck* (1997) 52 Cal.App.4th 287, 298.)

In concluding there was substantial evidence supporting the credible threat evidence, the appellate court again relied on the scenario where petitioner was seeking to establish a romantic relationship with Araceli. (Slip opn. p. 7.) As discussed in Argument I, ante. pp. 7-8, the record does not support this unrequited love theory.

Here, nothing petitioner ever did or said was made with the specific intent to threaten the safety of Araceli or her family. Petitioner's actions were limited to shouting "Hey", driving by Araceli or her house a few times, and leaving two non-threatening love notes addressed to his ex-wife "Tess." At best petitioner's conduct and words may be characterized as annoying and bothersome, but they did not rise to the level of stalking. The evidence adduced at trial was simply insufficient to prove beyond a reasonable doubt that petitioner made a credible threat against Araceli which placed her in fear for her safety or the safety of her family.

Petitioner made no verbal threats of any kind, made no physical contact with Araceli or any member of her family, made no threatening gestures, brandished no weapon, and took no physical action toward any family member.[1] There was no evidence petitioner ever threatened Araceli, much less uttered any words or took any action with the specific intent to place her or her family in fear for their safety.

The entirety of the evidence shows petitioner's only intent was to express his love for his ex-wife "Tess" and his deep desire to talk to her. While petitioner's conduct may have been unwanted and may have caused

---

[1] As previously set forth there was no evidence petitioner knew George was Araceli's husband when petitioner returned volley with the ice cream.

Araceli to be scared it did not constitute stalking.

### D.    Conclusion

As a matter of law, because petitioner did not issue a credible threat, there was insufficient evidence to support the stalking conviction. Petitioner's unsupported conviction violates his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments. (*Jackson v. Virginia, supra,* 443 U.S. at pp. 315-316; *People v. Rowland, supra,* 4 Cal.4th at p. 269.)

This court should grant review to consider whether a criminal conviction based on insufficient evidence reaches the level of proof beyond a reasonable doubt.

**CONCLUSION**

For the reasons set forth above, appellant/petitioner requests this court grant review on these important issues of law.

DATED:  August 7, 2009

Respectfully submitted,

Lenore De Vita
Attorney for Appellant/Petitioner
David M. Thimmes

## CERTIFICATION UNDER RULE 8.504

Pursuant to Rule 8.504, I certify the attached Petition for Review contains less than 8,400 words. In particular, this Petition contains 4,253 words excluding the Tables and this Certification.

In making this certification, counsel has relied on the word count of the word processing system used to prepare this brief (Word.)

Lenore De Vita

Attorney for Appellant/Petitioner

David M. Thimmes

# APPENDIX I

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID M. THIMMES,<br><br>    Defendant and Appellant. | 2d Crim. No. B210904<br>(Super. Ct. No. NA076325)<br>(Los Angeles County)<br><br>COURT OF APPEAL - SECOND DIST.<br><br>F I L E D<br><br>JUL 1 3 2009<br><br>JOSEPH A. LANE, Clerk<br><br>Deputy Clerk |

David Thimmes appeals from the judgment entered following his conviction by a jury of making a criminal threat (Pen. Code, § 422)[1] and stalking.  (§ 646.9, subd. (a).) Appellant admitted allegations of two prior prison terms (§ 667.5, subd. (b)) and one prior serious or violent felony conviction within the meaning of the "Three Strikes" law. (§§ 1170.12, subds. (a)-(d); 667, subds. (b)-(i).)  At the time of sentencing, the prosecutor informed the court that only one of the prior prison terms was valid.  Appellant was sentenced to prison for eight years, four months.  Appellant contends that the evidence is insufficient to support his convictions.  We affirm.

### Facts

During the night of August 13, 2007, Araceli Rossi (Araceli) was driving home. While Araceli was making a left turn at an intersection, she heard appellant angrily yell, "Hey." (RT 332)  Appellant was driving another vehicle in the same intersection.

---

[1] All statutory references are to the Penal Code.

Araceli drove to the cul-de-sac where she lived and parked in her driveway. Appellant followed her home. Araceli "ducked down" inside her vehicle to hide from him. While inside her vehicle, she saw appellant drive by. Araceli entered her home and saw appellant drive by several more times. She "was really scared because obviously . . . he was looking for [her]."

Later that night, Araceli left to take her son to work. While Araceli was inside her vehicle, appellant "drove very slowly next to [her] vehicle and just had this smirk on his face." Araceli contacted the police.

The police stopped appellant, and Araceli "thought that was the end of it." But on October 26, 2007, appellant left a note on the windshield of Araceli's vehicle while it was parked in her driveway. The note stated, "Tess, I love you. Kiss." As appellant was walking toward the driveway to leave the note, he made eye contact with Araceli's son, J.R. Appellant stared at J.R. with "a scary face."

Later that same day, J.R. and his sister drove out of the cul-de-sac to search for appellant. J.R. saw appellant's vehicle behind them. Appellant drove alongside J.R.'s vehicle. Appellant and J.R. made eye contact.

On October 27, 2007, appellant left a second note on Araceli's windshield while it was parked in her driveway. The note stated, "Tess, I love you. Can I talk to you? It will help us. So can we talk and so forth. All I live for is to talk to you."

On October 28, 2007, Araceli's husband, George Rossi (George), and J.R. were driving home when they saw appellant's vehicle. George pulled his vehicle next to appellant's and yelled, "What the fuck are you coming around my house for?" Appellant replied "sarcastically, 'I'm not coming around your house.' " George threw an ice cream cone at appellant. It missed him but landed inside his vehicle. Appellant said to George, "I'm going to fuck you up." Appellant picked up the ice cream cone, threw it at George's vehicle, and drove away.

George was scared. He considered appellant's statement to be a threat. He "thought [appellant] was going to pull out a gun or something." George drove home.

On October 30, 2007, a neighbor of the Rossis saw a vehicle in the neighborhood that matched the description of appellant's vehicle. George saw appellant in the evening on November 1, 2007. George was driving home, and appellant was driving away from George's home. George telephoned the police. George testified, "I felt he was coming around to stalk us, my wife and my whole family." In view of appellant's previous threat, George "was thinking that maybe [appellant] has a gun in his car or he's coming around to look at me."

On November 1, 2007, the police arrested appellant and searched his vehicle. The police found notes beginning with the word, "Tess," binoculars, and a Google map printout showing that the distance between appellant's residence and the Rossis' home was about 1.7 miles.

Appellant was questioned by the police. Appellant said that he had told George that he "was going to beat him up." Appellant also said that, about a month before his arrest, he had been "pulled over by the cops" for "following and scaring a lady." Appellant denied leaving notes on Araceli's car. He was shown the notes found on her car and admitted writing them. But he insisted that the police had recovered these notes during the search of his own vehicle. Appellant said that his former wife's nickname was "Tess."

### Standard of Review

"[W]e review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - that is, evidence that is reasonable, credible and of solid value - from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Snow* (2003) 30 Cal.4th 43, 66.) "Reversal . . . is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

### Section 422: Making Criminal Threats

The violation of section 422 was based on appellant's threat to George, "I'm going to fuck you up." To prove a violation of section 422, the prosecution must establish the

3

following five elements: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]"[2] (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.) Appellant contends that the evidence is insufficient to establish these five elements. He characterizes his confrontation with George as "nothing more than an exchange of profanity and a display of male 'chest thumping'."

"[T]he meaning of the threat . . . must be gleaned from the words and all of the surrounding circumstances." (*People v. Butler* (2000) 85 Cal.App.4th 745, 753.) "[I]t is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422. [Citations.]" (*Id.*, at pp. 753-754.)

Considering all of the surrounding circumstances, a reasonable trier of fact could conclude that the elements of a violation of section 422 had been proved beyond a reasonable doubt. George was Araceli's husband, and this fact should have been evident to appellant. It is reasonable to infer that appellant regarded George as his chief rival for

---

[2] Section 422 provides in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

Araceli's affection and the major obstacle to his goal of developing a romantic relationship with her. George confronted appellant and yelled, "What the fuck are you coming around my house for?" George's statement clearly implied a demand to stop "coming around" his house. It is reasonable to infer that this demand infuriated appellant, who had professed his love for Araceli and had told her, "All I live for is to talk to you." Appellant lied by "sarcastically" denying that he had been "coming around" George's house. Appellant's fury intensified when, in response to his denial, George threw an ice cream cone at him. It was at this point that appellant threatened to "fuck [George] up." Appellant construed his statement as a threat to inflict great bodily injury. He admitted to the police that he had told George that he "was going to beat him up." Although appellant drove away from the scene of the confrontation, he had the ability to carry out his threat because he knew where George lived.

We reject appellant's contention that the corpus delicti rule precludes consideration of his admission that he had told George that he was going to beat him up. Pursuant to this rule, the "corpus delicti must be established by the prosecution independently from the extrajudicial statements, confessions or admissions of the defendant. [Citations.] The elements of the corpus delicti are (1) the injury, loss or harm, and (2) the criminal agency that has caused the injury, loss or harm. [Citation.] . . . A slight or prima facie showing, permitting the reasonable inference that a crime was committed, is sufficient [to establish the corpus delicti]." (*People v. Wright* (1990) 52 Cal.3d 367, 403-404.) Here the corpus delicti of making a criminal threat was established independently of appellant's extrajudicial admission.

Accordingly, substantial evidence supports the elements that appellant willfully threatened to inflict great bodily injury on George, that he made the threat with the specific intent that it be taken as a threat, and "that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat.'" (*People v. Toledo, supra,* 26 Cal.4th at p. 228.) " 'The use of the word "so" indicates that unequivocality, unconditionality,

5

immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 340.)

Substantial evidence also supports the element that the threat caused George to be in sustained fear for his safety.  George testified that, at the time appellant made the threat, he "thought [appellant] was going to pull out a gun or something."  When George saw appellant several days later, he "was thinking that maybe [appellant] has a gun in his car or he's coming around to look at me."  George's fear for his safety led him to call the police.  Under the circumstances, this fear was reasonable.

### Section 646.9: Stalking

Section 646.9, subdivision (a), provides: "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking . . . ."  Appellant contends that the evidence is insufficient to support the "credible threat" element.  " '[C]redible threat' " means a verbal or written threat, . . . or a threat implied by a pattern of conduct or a combination of verbal [or] written . . . statements and conduct . . . made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family.  It is not necessary to prove that the defendant had the intent to actually carry out the threat." (*Id.*, subd. (g).)

Appellant is wrong in maintaining that "the 'credible threat' '. . . must be made with the specific intent to place the victim in a reasonable fear of death or great bodily harm.' " (AOB 20)  Section 646.9 used to provide that a credible threat " 'must be against the life of, or a threat to cause great bodily injury to, a person as defined in Section 12022.7.' [Citation.]" (*People v. Carron* (1995) 37 Cal.App.4th 1230, 1238.)  "[S]tatutory

6

amendments have modified the 'credible threat' element to require that the target of the threat need only fear for the target's safety or that of his or her family while deleting any requirement that the threat be 'against the life of, or [threaten] great bodily injury to' the target. (See Stats.1994, ch. 931, § 1.)" (*People v. Zavala* (2005) 130 Cal.App.4th 758, 767.)

Substantial evidence supports the credible threat element. A reasonable trier of fact could find beyond a reasonable doubt that appellant's pattern of conduct implied a threat made with both the apparent ability to carry it out and the intent to place Araceli in reasonable fear for her safety and the safety of her family. Appellant clearly indicated that nothing would stop him from achieving his goal of developing a romantic relationship with Araceli. He knew that Araceli feared him and wanted him to stay away from her. On August 13, 2007, appellant was stopped by the police because of Araceli's complaint. After his arrest on November 1, 2007, appellant told the police that he had been stopped for "following and scaring a lady." Despite the warning by the police on August 13, 2007, appellant continued his pursuit of Araceli. He drove to Araceli's home and left notes professing his love for her on the windshield of her car. He stared at her son, J.R., with "a scary face." When George confronted appellant and demanded an end to the harassment of his family, appellant threatened to physically harm him. Despite George's demand, appellant returned to Araceli's neighborhood a few days later.

Moreover, appellant's lies about his conduct evidenced a consciousness of guilt. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1135-1136.) Appellant lied to George when he denied "coming around" George's house. After his arrest, appellant lied to the police when he denied leaving notes on Araceli's car.

Appellant's threats caused Araceli to fear for her safety and the safety of her family. Araceli testified: "[I]t has been terrorizing." "I was always looking over my shoulder. I would not go home unless someone was home." She installed an alarm system in her home, took "self-defense courses," and "sought some counseling." When she learned of appellant's threat to physically harm George, she was "fearful because now he has confronted my husband, and my child was in the car."

In view of appellant's threat to "fuck [George] up," Araceli's fear for her family's safety was reasonable.  So was her fear for her own safety: "[I]t is a sad truth, and one commonly reported, that persons such as appellant, in the grips of an obsession, have killed or harmed the object of that obsession, even while maintaining that they have no desire to cause harm."  (*People v. Falck* (1997) 52 Cal.App.4th 287, 298.)

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, Acting P.J.

We concur:

COFFEE, J.

PERREN, J.

Charles D. Sheldon, Judge

Superior Court County of Los Angeles

---

Lenore D. De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Sarah J. Frhat, Julie A. Harris, Deputy Attorneys General, for Plaintiff and Respondent.

9

## DECLARATION OF SERVICE BY MAIL
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Lenore De Vita, declare I am employed in Los Angeles County, I am over the age of eighteen (18) years, and not party to the within action; my business address is P.O. Box 2544 Toluca Lake, California, 91610.

On August 7, 2009, I served the within Petitioner's/Appellant's Petition for Review on the interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Toluca Lake, California, addressed as follows:

Office of the Attorney General
300 South Spring Street
Suite 1702
Los Angeles, CA 90013

District Attorney's Office
415 W. Ocean Blvd., Room 305
Long Beach, CA 90802-4591
Attn: Pat O'Crowley, DDA

The Honorable Charles D. Sheldon
Long Beach Courthouse
415 W. Ocean Blvd
Long Beach, CA 90802-4591

California Court of Appeal
Second Appellate Dist., Div. Six
Court Place 200
East Santa Clara Street
Ventura, CA 93001

Norman Sasamori
Attorney at Law
9025 Wilshire Blvd PH Ste
Beverly Hills, CA 90211

California Appellate Project
520 S. Grand Avenue
Fourth Floor
Los Angeles, CA 90071

David M. Thimmes, V-81353
CA Men's Colony State Prison
P. O. Box 8103
San Luis Obispo, CA 93409-8101
Defendant and Appellant

I declare under penalty of perjury the forgoing is true and correct and this proof of Service was executed at Toluca Lake, California on August 7, 2009.

_Lenore De Vita_
Lenore De Vita



DaViD M. THiMMes
V81363-Cell-#-31-361ow
California Mens ColonyState Prison
SLN Luis Obispo, Ca 93409-
Box 8103

Case No. No.076325-01
Los Angeles County
Superior Court

Legal-Mail

CALIFORNIA MEN'S COLONY
STATE PRISON
SAN LUIS OBISPO CA 93409

Priority Mail
ComBashPost

$ 04.90°
MAY 11 2010
MAILED FROM ZIP CODE 93409

To: Federal District Courts
UNited States District court For the central
District, western DivisioN
318 North Spring street # G-8
Los Angeles, Ca. 90012-4793

MAY 12 2010

22 SU

Legal Mail





**TERRY NAFISI**

District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8  Los
Angeles, CA  90012
Tel: (213) 894-3535

Friday, May 14, 2010

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

DAVID M. THIMMES
CDC# V-81353
P.O. BOX 8103
SAN LUIS OBISPO, CA 93409-8103

Dear Sir/Madam:

Your petition has been filed and assigned civil case number      CV10- 3638 VBF (OP)

Upon the submission of your petition, it was noted that the following discrepencies exist:

☐ 1. You did not pay the appropriate filing fee of $5.00.  Submit a cashier's check, certified bank
check, business or corporate check, government issued check, or money order drawn on a major
American bank or the United States Postal Service payable to 'Clerk U.S. District Court'.  If
you are unable to pay the entire filing fee at this time, you must sign and complete this
court's Prisoner's Declaration In Support of Request to Proceed In Forma Pauperis in its
entirety.  The Clerk's Office will also accept credit cards (Mastercard, Visa, Discover,
American Express) for filing fees and miscellaneous fees.  Credit card payments may be made at
all payment windows where receipts are issued.

☒ 2. The Declaration of Request to Proceed in Forma Pauperis is insufficient because:

   ☐ (a) You did not sign your Declaration in Support of Request to Proceed in Forma Pauperis.

   ☒ (b) Your Declaration in Support of Request to Proceed in Forma Pauperis was not completed in its
   entirety.

   ☒ (c) You did not submit a Certificate of Prisoner's Funds completed and signed by an authorized
   officer at the prison.

   ☐ (d) You did not use the correct form.  You must submit this court's current Declaration in
   Support of Request to Proceed in Forma Pauperis.

   ☐ (e) Other: _____

Enclosed you will find this court's current Prisoner's Declaration in Support of Request to Proceed in
Forma Pauperis, which includes a Certificate of Funds in Prisoner's Account Form.

Sincerely,

Clerk, U.S. District Court

AGRAGERA

By: _____

Deputy Clerk

CV-111 (07/06)          **NOTICE re: DISCREPENCIES FOR FILING OF HABEAS CORPUS PETITION**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8  Los
Angeles, CA  90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive
and Clerk of Court

Friday, May 14, 2010

**DAVID M. THIMMES**
**CDC# V-81353**
**P.O. BOX 8103**
**SAN LUIS OBISPO, CA 93409-8103**

Dear Sir/Madam:

A  [X]  Petition for Writ of Habeas Corpus was filed today on your behalf and assigned civil case number
CV10- 3638 VBF (OP)

A  [ ]  Motion pursuant to Title 28, United States Code, Section 2255, was filed today in criminal case
number _____  and also assigned the civil case number  _____

A  [ ]  Motion for Extension of Time to File Habeas Corpus Petition was filed today on your behalf and
assigned civil case number _____

Please refer to these case numbers in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:
[ ]  District Court Judge _____
[X]  Magistrate Judge _____**Oswald Parada**_____
at the following address:

[ ]  U.S. District Court
312 N. Spring Street
Civil Section, Room G-8
Los Angeles, CA  90012

[ ]  Ronald Reagan Federal
Building and U.S. Courthouse
411 West Fourth St., Suite 1053
Santa Ana, CA  92701-4516

[X]  U.S. District Court
3470 Twelfth Street
Room 134
Riverside, CA 92501

The Court must be notified within fifteen (15) days of any address change.  If mail directed to your
address of record is returned undelivered by the Post Office, and if the Court and opposing counsel
are not notified in writing within fifteen (15) days thereafter of your current address, the Court may
dismiss the case with or without prejudice for want of prosecution.

Very truly yours,

Clerk, U.S. District Court

By: ___AGRAGERA_____
Deputy Clerk

CV-17  (06/09)                 **LETTER re FILING H/C PETITION or 28/2255 MOTION**